**STATE of Missouri, Respondent,**

v.

**Charles Arthur HARDIN, Appellant.**

**No. 59863.**

Supreme Court of Missouri,
en banc.

Sept. 12, 1977.

James C. Jones, Asst. Public Defender, St. Louis, for appellant.

Paul R. Otto, Asst. Atty. Gen., Jefferson City, for respondent.

HENLEY, Judge.

Charles Arthur Hardin (defendant), charged by information with armed robbery (§§ 560.120 and 560.135),[1] was found guilty by a jury and, having been convicted of a prior armed robbery, was sentenced by the court (§ 556.280) to imprisonment for 15 years. Upon appeal to the Court of Appeals, St. Louis district, his conviction was affirmed. We ordered this case transferred on application of defendant to consider points briefed by him in but not considered by the court of appeals in its opinion. Those points understandably were not considered, because the transcript (approved by defendant and the State) showed that his motion for new trial was not timely filed. However, as defendant so strongly insisted in this application (and in his motion for rehearing in the court of appeals), the trial court's record shows, as does the record on appeal now show, that his motion for new trial was in fact timely filed. Counsel for parties on appeal are reminded that it is their duty to see to it that necessary parts of the record are accurately shown in the transcript. Having considered and determined these points "the same as on original appeal" (Mo.Const. Art. V, § 10), we affirm.

The jury reasonably could have found the facts to be as follows. On April 22, 1974, at about 7:45 p. m., Elbert Ray Montgomery was unlocking the gate in front of his home in St. Louis when defendant and two other men walked up behind him. Defendant, armed with a revolver, nervously pointed it at Montgomery and told him to "be cool" while one of the other men searched his pockets and took his wallet and its contents. The wallet contained $360 cash, a cashier's check of the Mound City Trust Company payable to Elbert Montgomery for $800, Montgomery's driver's license, and other items. Mr. Montgomery testified that the robbery took approximately one and one-half minutes; that it was still light enough and defendant close enough during the robbery that he could see defendant very clearly and that he watched him with such concentration that defendant noticed and, with the revolver, nervously commanded him to quit looking at his face; that he called the police immediately and gave them a detailed description of defendant and the property taken; that he reported the taking of the cashier's check to Mound City Trust Company early the next morning (April 23).

Later that day (April 23), a man identified as Leon McCoy presented this cashier's check, with Montgomery's driver's license for identification, to Marie Stumpe, a Mound City Trust Company teller, for cashing at her "walkup" window. She had been alerted that morning that this check had been taken in a robbery. She handed McCoy a pen and he endorsed the check while she was making contact with the bank's security officer. The endorsement signature was not the same as that on the driver's license. This information having been communicated to him, the security officer, Guybert Barnes, stepped outside and took McCoy into custody and handcuffed him.

Mr. Barnes then went out into the bank's parking lot and approached an automobile occupied by three men he thought might be McCoy's accomplices. This automobile immediately sped out of the lot with Barnes in hot pursuit. The car was stopped and its occupants apprehended about two blocks from the bank. Defendant was one of the occupants. All were taken back to the bank where they and McCoy were delivered to the police.

Mr. Montgomery positively identified defendant at a lineup later that same day (April 23). He also saw McCoy at the police station before the lineup and told the police that he was not one of the three men who robbed him. He identified defendant at

---

1. References to sections of statutes are to RSMo 1969.

trial as the man who held a revolver on him while his property was being taken.

Defendant briefs three points, all relating to the admissibility of evidence. The first of these arises out of a lineup and the second an in-court identification. We consider the two together.

He contends that the court erred in admitting evidence of his identification by Elbert Ray Montgomery at the lineup and in court, because the lineup and both identifications were the fruit of an illegal arrest; that his arrest near the bank after a chase was illegal because it was made without a warrant or probable cause to believe that a felony had been committed by him.

 In the first place, the alleged error in the admission of this evidence is not preserved for review, because the question of validity or invalidity of his arrest and the admissibility in evidence of what he says are the fruits of that arrest present issues collateral to, and which must be determined in a proceeding independent of, the issue of guilt. *State v. Dalton,* 23 S.W.2d 1, 5[6] (Mo.1929); *State v. Yowell,* 513 S.W.2d 397, 402–403[1, 2] (Mo.banc 1974). To preserve this alleged error for review defendant was required to, but did not, raise this question prior to trial in a motion to suppress the evidence. *State v. Yowell, supra; State v. Wragg,* 395 S.W.2d 196, 199[4] (Mo.1965); *Schleicher v. State,* 483 S.W.2d 393, 394[1] (Mo.banc 1972).

However, even if we assume the arrest was illegal, the evidence was admissible, because there is no evidence from which it reasonably may be said that the lineup itself was impermissibly suggestive, and because both the lineup identification and the in-court identification emanated from a source independent of the arrest. It is clear from a review of the record that the source of Elbert Montgomery's identification of defendant was his close face-to-face observation of defendant and his mannerisms during the robbery. *State v. Thomas,* 491 S.W.2d 328 (Mo.1973); *State v. McIntosh,* 492 S.W.2d 843, 845[3] (Mo.1973).

Defendant's last point is that the court erred in admitting the testimony of the bank teller and the security officer, regarding the attempt by Leon McCoy to cash the cashier's check and defendant's apprehension nearby, because this evidence is not relevant to his guilt or innocence of the armed robbery the day before. Defendant argues that all this evidence does is place him at the scene where the stolen check was presented for payment. The evidence of defendant's presence in the parking lot of the bank which had issued the stolen check and that he was one of the men occupying an automobile which fled the lot as the security officer approached after having openly taken in custody the man who had presented the check for payment, would not, standing alone, support a conviction, but it is, in the circumstances of this case, evidence a jury may consider in connection with the other evidence in determining defendant's guilt or innocence of the robbery which produced the check. *State v. Ross,* 502 S.W.2d 241, 248[9] (Mo. 1973). The court did not err in admitting this evidence.

The judgment is affirmed.

All concur.