**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Juan MERCADO, Jr., Defendant–
Appellant.**

No. 19050.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 6, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 1994.

Application to Transfer Denied
Dec. 20, 1994.

William J. Fleischaker, Roberts, Fleischaker, Williams & Powell, Joplin, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Judge.

Juan Mercado, Jr., (defendant) was convicted, following a jury trial, of the class B felony of trafficking drugs in the second degree. § 195.223.7(1).[1] The trial court found defendant to be a prior and persistent offender and sentenced him to imprisonment for a term of 25 years pursuant to

1. References to statutes are to RSMo Supp.1992.

§ 558.016.7(2). This court reverses the judgment of conviction due to insufficiency of the evidence and directs the trial court to enter judgment of acquittal and order defendant discharged.

On March 16, 1993, Joplin Police Officer Pete Box stopped a brown GMC van for following another vehicle too closely. The van was traveling along Interstate 44 (I–44) in Newton County, Missouri. It was registered to Augustine Rodriguez, the driver of the vehicle. Defendant was a passenger. He was lying on a seat that converted into a bed in the back of the van.

Officer Box attempted to speak to Rodriguez. Defendant explained that Rodriguez did not speak English and offered to translate. The officer told defendant that he needed to see Rodriguez's driver's license. Defendant replied that Rodriguez did not have a driver's license. Officer Box asked for identification. Defendant spoke to Rodriguez, and Rodriguez handed the officer a resident alien's identification card.

Officer Box asked defendant if he had a driver's license. He told defendant if he did to step back to his car. Defendant acknowledged that he had a license and accompanied the officer to the car.

Defendant told Officer Box that he was helping Rodriguez drive the van; that they had come from San Antonio. Defendant did not know Rodriguez's destination.

Officer Box explained "about the problem" of I–44 being used to transport illegal weapons and narcotics from the south to the north. The officer asked if defendant and Rodriguez had anything like that in the van. Defendant answered that they did not. Officer Box asked if he could look in the vehicle for guns and drugs. Defendant told Officer Box he could.

The officer asked defendant to tell Rodriguez about the problem of illegal guns and drugs along I–44 and to ask Rodriguez if there was anything like that in the van. Defendant spoke to Rodriguez. Rodriguez shook his head in a negative manner and said something in Spanish.

Officer Box requested defendant to ask Rodriguez if he could look in the van for those types of items. Rodriguez spoke to defendant in Spanish and gestured toward the van. Defendant told the officer that Rodriguez said to go ahead.

Officer Box called for assistance. While he waited for another officer to arrive, he opened the side doors of the van and looked inside. The van had four captain's chairs and a rear seat that converted into a bed—the seat on which defendant was lying when the van was stopped. Officer Box thought the carpet and seats showed normal wear. He noticed that the side panels on the doors and walls were covered with "real new looking material." Officer Box then went to the rear of the van. As he was opening one of the rear doors, Officer Goodwin arrived to assist.

The wall panels of the van were attached with screws. The paneling by the rear door did not reach the carpet—there was "a [sic] inch and a half or so" between the bottom of the panel and the carpet. The panel was loose next to the floor of the van. The threads on a screw had either been stripped or the screw was not completely tightened. Officer Box explained, "I stuck my hand under the panel, and I could feel an object—a taped object. I could feel the lines of tape, and it gave when I pushed on it."

Officer Box asked Officer Goodwin to check what was there. He felt behind the panel with his hand and then moved so that his nose was about six inches from the panel. He smelled marijuana.

Officer Box pulled back the panel. Officer Goodwin reached behind the panel and pulled out a wrapped package. The officers opened the package and inspected its contents. They identified the contents as marijuana. Defendant and Rodriguez were arrested.

The officers took the van to the police station. After arriving at the police station, the interior panels were taken from the van by removing the screws that attached them to the sides and doors of the vehicle. Pack-

ages of marijuana were behind the panels. The packages were shaped to conform to the recesses where they had been placed. Almost 200 pounds of marijuana was removed from the van.[2]

There were bags of clothing behind and under the rear seat of the van. The clothing was in a black suitcase, a blue gym bag, a blue hanging bag and a brown paper sack.

At the close of the state's evidence, defendant moved for judgment of acquittal on the basis that there was not sufficient evidence from which reasonable jurors could find that defendant possessed more than 30 kilograms of marijuana. The trial court denied defendant's motion. Defendant rested without presenting further evidence and renewed his motion for acquittal. The trial court again denied the motion.

Defendant presents four points on appeal. The first point is dispositive. The remaining points will not be addressed.

Point I asserts the trial court erred in denying defendant's motion for acquittal because "there was not sufficient evidence from which reasonable individuals could conclude that [defendant] was guilty ... in that, assessed in the light most favorable to the state, the evidence only shows that [defendant] was a passenger in a van where a large quantity of marijuana was found." Defendant contends there was no evidence that he knew the marijuana was there or that he directly or constructively exercised dominion over it.

In order to prove possession of a controlled substance, "the State must prove (1) conscious and intentional possession of the substance, either actual or constructive, and (2) awareness of the presence and nature of th[e] substance." *State v. Fuente,* 871 S.W.2d 438, 442 (Mo. banc 1994). *See also State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992); *State v. Gulley,* 776 S.W.2d 492, 494 (Mo.App.1989). "Actual possession is not necessary to sustain a conviction, constructive possession will suffice when other facts buttress an inference of defendant's knowl-

---

**2.** The information filed by the state charged defendant with the offense of trafficking drugs in the second degree, a class B felony. The infor-

mation alleged that "defendant possessed more than 30 kilograms of a mixture or substance containing marijuana."

edge of the presence of the controlled substance." *State v. West,* 559 S.W.2d 282, 284 (Mo.App.1977).

■ "Both possession and knowledge may be proved by circumstantial evidence." *State v. Barber,* 635 S.W.2d 342, 343 (Mo. 1982). If there is joint control over premises where drugs were found, further evidence is necessary to connect an accused with the drugs. *Id.* at 343–44. Whether a defendant has access to the area where drugs were found is a basis for finding constructive possession. *State v. West, supra.*

■ The only direct evidence connecting defendant with the drugs he is accused of possessing is that he was a passenger in the van and had been assisting the owner in driving the van. The marijuana was not visible upon entry into the van. It was concealed behind wall panels that were held in place by screws connecting the panels to the wall of the van. There was no discernable odor in the passenger compartment of the van, either emitted by the marijuana or something used to mask an otherwise pungent smell.

When the van was stopped by Officer Box, defendant was lying on the rear seat. There was approximately two and a half to three feet distance between the edge of the seat and the loose panel that Officer Box later discovered. When Officer Goodwin arrived to assist Officer Box, he got to within six inches of the loose edge of the panel before he detected an odor that he believed came from marijuana.

The question presented is whether there were sufficient facts to buttress an inference that defendant's presence in the van and his assistance in driving the van demonstrated knowledge of the marijuana and an awareness of its nature. *State v. Fuente, supra; State v. Purlee, supra;* and *State v. West, supra,* are helpful in analyzing the evidence in this case.

In *Fuente* a highway patrol officer stopped a car for speeding on an interstate highway—the car was traveling 65 miles per hour in a 55 mile-per-hour zone. When the officer approached the vehicle, she smelled marijuana. In addition to the driver, one passenger was in the vehicle. The officer had the driver sit in her patrol car while she checked his driver's license and the registration of his vehicle. The vehicle was registered in Florida in the name of the driver's mother.

While waiting for the registration check, the officer asked if she could search the vehicle. The driver declined to consent to a search. The officer used her radio to request the assistance of a canine unit. The officer asked the driver what the dogs would "hit on." 871 S.W.2d at 439. He told her all he had was a pipe and a little baggie. At the officer's request, the driver retrieved the items from his vehicle. The "little baggie" contained marijuana. A further search of the vehicle disclosed 45 pounds of marijuana in a blue bag in the rear of the vehicle—a Chevrolet Blazer.

The defendant in *Fuente* was found guilty of possession of more than 35 grams of marijuana. On appeal the court held that there was "overwhelming" evidence to support the conviction. The evidence the court recited included that the vehicle was registered in the name of the driver's mother "which creates a clear implication that [the driver], not [the passenger], was in control of the vehicle." *Id.* at 442.

The driver's conscious possession and awareness of the marijuana was established by the officer's testimony that when she opened the window in the rear of the vehicle, "she was 'blasted in the face with a very strong smell of marijuana.'" *Id.* The court held that it was "entitled to infer that [the driver] was aware of the presence of the marijuana inside the Blazer because of its unmistakably strong odor." *Id.* The court concluded, "This evidence alone is sufficient to support the trial court's determination that [the driver] knowingly and intelligently possessed 45 pounds of marijuana and knew the nature of the substance." *Id.*

In *Purlee* a highway patrol officer stopped a van for going 62 miles per hour in a 55 mile-per-hour speed zone. Mr. Purlee was driving the vehicle. Another person was in the front passenger seat. The officer approached the driver's side of the van. When the driver rolled down the window the officer

noticed a "very strong" odor of marijuana. 839 S.W.2d at 586. He had the driver get out of the van. The officer immediately arrested the driver for possession of marijuana. The passenger was then removed from the vehicle and arrested.

The court found four factors that it held established conscious and intentional possession of the marijuana by the driver and an awareness of its nature: (1) the "strong odor" of marijuana that was present in the van, (2) the presence of the driver's personal effects next to the bags in the back of the van that contained 86 pounds of marijuana,[3] (3) presence of a revolver next to the driver's seat of the van within easy reach of the driver, and (4) the fact that the driver had traveled on a one-way airline ticket from his residence in Illinois and was returning in a van containing a large amount of contraband.

In *Purlee* the court held, "An acquittal verdict would have been inconsistent with the totality of facts reasonably considered, excepting only Purlee's denials." *Id.* at 589.

In *West* the court held that evidence at trial was not sufficient to support a verdict of guilty of possession of the controlled substance phencyclidine. Referring to the statement in *State v. Burns*, 457 S.W.2d 721, 724 (Mo.1970), "Possession without knowledge of such possession is not possession in the legal sense of that word," *West* held that, considering all the evidence in the case, the presence of a quantity of phencyclidine in the trunk of a car owned by the defendant did not support the trial court's verdict of guilty of possession of the drug.

The defendant in *West* purchased the car in which the phencyclidine was found about three weeks prior to her arrest. The phencyclidine was in a box in the trunk of the car. There was no evidence the defendant had touched the box, nor that the defendant had entered the trunk since she acquired the car.

The court said, "There was no evidence that the defendant had exclusive control of the automobile, in fact, testimony in the state's own case indicated others had access

to the automobile." 559 S.W.2d at 285. The court based its determination that the car had been accessible to others on the fact that the defendant did not have keys to the automobile immediately prior to when it was searched and the phencyclidine discovered. The court concluded that the evidence was not sufficient to "buttress an inference of defendant's knowledge of the presence of the controlled substance." *Id.*

This case is more akin to *West* than to *Fuente* or *Purlee.* Unlike in *Fuente* and in *Purlee,* there was no odor or other discernable trace of the presence of marijuana in the passenger area of the van. The only place that Officer Goodwin detected an odor that he believed came from marijuana was six inches from a small gap between the bottom of a wall panel and the floor of the van in the rear-most portion of its cargo area. There was no evidence that defendant had access to the areas behind the wall and door panels where the marijuana was concealed. The van did not belong to defendant and he had no keys to it. There was no weapon present to indicate a perceived need to guard valuable cargo.

The evidence failed to provide a reasonable basis for finding defendant guilty. The state points to Officer Box's observation that defendant was nervous and spoke in a stuttering manner when he was seated in Officer Box's car immediately after the van was stopped. It argues this was evidence that defendant knew of the presence of the marijuana in the van and of its nature. That alone was not sufficient evidence from which reasonable jurors could find defendant guilty of trafficking drugs. Defendant's first point is well-taken. The trial court erred in failing to grant defendant's motion for acquittal.

■ The state had opportunity to develop its case fully. It will not be remanded for a new trial. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). *See also State v. Rogers,* 380 S.W.2d 398, 400 (Mo.1964); *State v. Walker,* 365 S.W.2d 597, 602 (Mo.1963); *State v. Lowe,* 574 S.W.2d 515, 522 (Mo.App.1978); *State v. West, su-*

---

**3.** "Routine access to the area containing the proscribed substance supports a factual finding that a defendant consciously possessed the sub-

stance." *State v. Gulley,* 776 S.W.2d 492, 494 (Mo.App.1989).

*pra,* at 285. The judgment of conviction is reversed and the case remanded with instructions that the trial court enter a judgment of acquittal and order defendant discharged.

GARRISON, P.J., concurs.

CROW, J., dissents in separate opinion filed.

CROW, Judge, dissenting.

I respectfully dissent. Although this is a close case, I believe the evidence, viewed favorably to the verdict, *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993), is sufficient to support the conviction.

At the site of the stop, Officer Box asked Defendant whose van it was, and Defendant said he did not know. Yet, when Box asked Defendant if he (Box) could look in the van for guns and drugs, Defendant consented without seeking authority from Rodriguez, the only other occupant. The jury could reasonably infer from this that Defendant shared control over the van with Rodriguez.

Furthermore, Defendant, by his own admission, had started with Rodriguez (a resident alien with no driver's license) in San Antonio, Texas, and was sharing the driving with him. The duo had little clothing with them, apparently only enough for a couple of changes. Yet, Defendant denied knowledge of their destination.

As noted in the majority opinion, actual possession is unnecessary to sustain a conviction; constructive possession will suffice when other facts buttress an inference of an accused's knowledge of the presence of the controlled substance. *State v. West,* 559 S.W.2d 282, 284[3] (Mo.App.1977). Both possession and knowledge may be proved by circumstantial evidence. *State v. Barber,* 635 S.W.2d 342, 343[3] (Mo.1982).

The jury found the evidence sufficient to establish guilt beyond a reasonable doubt. The jurors could have reasonably believed Defendant's professed ignorance of the destination was a ploy to conceal the identity of the party to whom the marijuana was being conveyed. Defendant had no explanation to Box for accompanying Rodriguez. Defendant did not claim he was kin to Rodriguez, that he was being paid for his help, or that they were traveling on business or for pleasure. Defendant's denial of knowing the destination bars any inference that he was sharing the driving in return for transportation to a place he wanted to go.

Those factors, coupled with the substantial quantity of marijuana (almost 200 pounds) and the circumstances recounted earlier, are, in my opinion, sufficient to support a finding that Defendant was a joint venturer with Rodriguez in trafficking the marijuana.