**STATE of Missouri, Plaintiff–Respondent,**

v.

**Geovanni L. GONZALEZ, Defendant–Appellant.**

No. 27968.

Missouri Court of Appeals,
Southern District,
Division Two.

July 26, 2007.

Motion for Rehearing and Transfer
Denied Aug. 17, 2007.

Nancy A. McKerrow, Office of State Public Defender, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Joshua N. Corman, Assistant Attorney General, Jefferson City, MO, for respondent.

GARY W. LYNCH, Judge.

Geovanni L. Gonzalez ("Defendant") appeals his conviction following a court trial upon a charge by information of the class B felony of possession of a controlled substance with intent to distribute, in violation of section 195.211.[1] Defendant brings two claims: the evidence was insufficient to support the conviction, and the drug evidence was inadmissible as a product of an unconstitutional seizure and search. We agree that the evidence was insufficient to support Defendant's conviction and reverse and remand with directions that Defendant be discharged.[2]

### 1) *The Scope of the Record for Review on a Claim of Insufficient Evidence*

Initially we note some confusion on the part of the state in its brief as to the scope of the record which is reviewable by an appellate court on Defendant's first point—sufficiency of the evidence to support his finding of guilt—as opposed to the scope of the record which is reviewable on Defendant's second point—admissibility of evidence in violation of his constitutional rights. The procedural background giving rise to this apparent confusion is as follows.

Defendant filed a motion to suppress the drug evidence as being obtained through an unconstitutional seizure and search. The trial court held an evidentiary hearing on this motion and overruled it. Defendant later waived his right to a jury, and the case was tried to the court. During the trial Defendant timely renewed his objections originally asserted in his motion to suppress, which were once again overruled by the trial court. None of the evidence adduced at the hearing on the motion to suppress was offered or otherwise admitted into evidence during the trial. *Contra State v. Johnson*, 529 S.W.2d 658, 661 (Mo.App.1975) (parties stipulated that testimony taken at hearing on motion to suppress may be admitted into evidence at trial as though presented in the state's case in chief); *State v. Wirth*, 192 S.W.3d

---

1. All references to statutes are to RSMo Cum. Supp.2005, unless otherwise indicated.

2. Our decision on Defendant's first point makes our consideration of his second point moot.

480, 482 (Mo.App.2006) (defendant requested that the motion to suppress "be taken up—... with the trial in this matter."); *State v. McDonald*, 10 S.W.3d 561, 562–563 (Mo.App.1999) (defendant stipulated that hearing on motion to suppress was also considered as the trial of the case).

■ The state's brief references and relies upon evidence elicited in the hearing on the motion to suppress and the trial. This is appropriate with regard to Defendant's second point—the admissibility of the drug evidence—because in determining the propriety of the admission of constitutionally challenged evidence by a motion to suppress which is overruled by the trial court, we review both the evidence adduced at the hearing on the motion to suppress and the evidence adduced at trial. *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005); *State v. Harrison*, 213 S.W.3d 58, 68 (Mo.App.2006). But in regard to Defendant's first point—sufficiency of the evidence to support his finding of guilt—consideration of evidence adduced at the hearing on the motion to suppress, but not admitted into evidence at the trial, is not appropriate.[3] In reaching this conclusion, we employ the following analysis.

■ The admissibility of evidence obtained through an allegedly illegal seizure or search raises a collateral issue, which is required to be tried in a proceeding independent of the issue of guilt. *State v. Dalton*, 23 S.W.2d 1, 5 (Mo.1929); *State v. Hardin*, 555 S.W.2d 27, 29 (Mo.1977); *State v. Henderson*, 954 S.W.2d 581, 585 (Mo.App.1997). One of the purposes in requiring the filing of a motion to suppress

prior to trial is to remove from the trial "collateral issues not bearing on guilt." *State v. Harrington*, 435 S.W.2d 318, 321 (Mo.1968). Evidence which may be admissible on these collateral issues may not necessarily be admissible on the issue of guilt. *See*, e.g., *State v. Ramires*, 152 S.W.3d 385, 399 (Mo.App.2004) (rule is well-established that defendant's testimony in support of his motion to suppress evidence as result of unlawful search or seizure may not be used against him at trial on issue of guilt).

On the other hand, "the purpose of a trial in a criminal case is to permit the fact-finder to determine a defendant's guilt." *Hagan v. State*, 836 S.W.2d 459, 464 (Mo. banc 1992) (questioned on other grounds by *State v. Heslop*, 842 S.W.2d 72, 75 (Mo. banc 1992)). It appears elementary that in order to achieve this purpose the evidence upon which the defendant's guilt is based must be presented during the trial. This proposition is clear in the context of a jury trial, in that the only evidence the jury receives is that adduced during the trial, which has defined beginning and ending points. Rule 27.02.[4]

Evidently from the state's brief in this case, this proposition is not so elementary or clear in the context of a court trial. Without citation to any supporting authority—and our research has disclosed no such authority exists—the state simply assumes that the trial by the court includes the evidence adduced during the hearing on the motion to suppress. This is not so. A court trial, just like a jury trial, has definite beginning and ending points. A court trial in a criminal case begins with a man-

---

**3.** The factual references in the state's argument in its brief in response to Defendant's first point are: "presence of nothing but fast food wrappers and trash" on page 16, and "the only other things in the car were fast food wrappers which Mathenia recognized as

being consistent with being a drug trafficker" on pages 20–21.

**4.** All references to rules are to Missouri Court Rules (2006), unless otherwise indicated.

datory opening statement by the state. *State v. Anders,* 975 S.W.2d 462, 466 (Mo. App.1998); Rule 27.02; Section 546.070. "A dual purpose has been attached to the requirement of an opening statement: to advise the jury of the facts which the state expects to prove, and to inform the defendant of the contemplated course of the prosecution in order that the defendant can meet the charge against him." *State v. Little,* 572 S.W.2d 871, 874 (Mo.App. 1978). The opening statement speaks prospectively, in that the state is required to advise the fact-finder of the evidence which it *expects* to prove and inform the defendant of the *contemplated* course of the prosecution. *Id.* Nothing in the record in the case at bar supports that the state ever informed Defendant that the evidence admitted in the hearing on the motion to suppress on the issue of the admissibility of the drug evidence would be used against him on the issue of his guilt.

Finally, Rule 27.07 provides, in part:

The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information *after the evidence on either side is closed* if the evidence is insufficient to sustain a conviction of such offense or offenses. (Emphasis added).

This rule explicitly references the points in a trial when either the evidence in the state's case-in-chief is closed or all evidence is closed. Thus, it obviously contemplates that the evidence must have "opened" at some preceding point in time. That point in time is immediately following the required state's opening statement and the defendant's optional opening statement. Rule 27.02. Therefore, the scope of the record for our review of Defendant's point challenging the sufficiency of the evidence to support his finding of guilt is that evidence admitted after the opening statements and before the close of all the evidence, i.e., the evidence presented at trial. *Id.;* Rule 27.07.

### 2) *Standard of Review*

 Where a defendant in a court-tried case challenges the sufficiency of the evidence to support his conviction, our standard of review is the same as in cases tried by a jury. *State v. Hudson,* 154 S.W.3d 426, 429 (Mo.App.2005). Our inquiry begins by looking to the elements of the crime and considering each in turn. *State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993).

"We accept as true all evidence tending to prove guilt together with all reasonable inferences that support the finding, and all contrary evidence and inferences are ignored. [*State v. Pollard,* 941 S.W.2d 831, 833 (Mo.App.1997) ]. We determine whether there was sufficient evidence from which a trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Phillips,* 940 S.W.2d 512, 520 (Mo.banc 1997). Moreover, this Court does not weigh the evidence or determine the reliability or credibility of witnesses. *State v. Frappier,* 941 S.W.2d 859, 861 (Mo.App. 1997)."

*State v. Wirth,* 192 S.W.3d 480, 481–82 (Mo.App.2006), *quoting State v. Mayfield,* 83 S.W.3d 103, 104–05 (Mo.App.2002), *quoting State v. Matney,* 979 S.W.2d 225, 226 (Mo.App.1998).

 " 'An "inference" is a conclusion drawn by reason from facts established by *proof;* "a deduction or conclusion from facts or propositions known to be true." ' " *State v. McMullin,* 136 S.W.3d 566, 573 (Mo.App.2004), *quoting Draper v. Louisville & N.R. Co.,* 348 Mo. 886, 156 S.W.2d 626, 630 (1941). "While we are to accept as true all inferences favorable to the State, they must be *logical* inferences that

may be reasonably drawn from the evidence." *State v. Friend,* 936 S.W.2d 824, 828 (Mo.App.1996), *citing State v. O'Brien,* 857 S.W.2d 212, 215–16 (Mo. banc 1993). We will not "supply missing evidence or give the state the benefit of unreasonable, speculative or forced inferences." *State v. Langdon,* 110 S.W.3d 807, 811–12 (Mo. banc 2003), *citing State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001).

### 3) *Factual Background*

The only witness at trial was the Assistant Chief of the City of Bourbon Department of Public Safety, Scott C. Mathenia ["Officer Mathenia"]. His trial testimony and the trial exhibits, viewed in accordance with the above-stated standard of review, reveal the following.

On April 4, 2006, Officer Mathenia was on duty and running stationary radar from a parked position on eastbound I–44. He observed an eastbound, gold Cavalier vehicle change lanes without signaling. Officer Mathenia pulled in behind the vehicle and activated his overhead lights to conduct a traffic stop for this infraction. As he took these actions, he observed that the vehicle had an Arizona license plate. The vehicle immediately stopped and pulled over. Before approaching the vehicle Officer Mathenia "ran the tags," and the result indicated the vehicle was registered to Jose Luiz Mjuarez.

When he approached the vehicle, Officer Mathenia identified Defendant as the driver and also observed a passenger, later identified as Irving Coronale, seated in the passenger side front seat. Officer Mathenia asked Defendant to produce his driver's license and the vehicle's registration. Failing to produce either document, Defendant handed Officer Mathenia a "Mexico I.D." Officer Mathenia then asked Defendant where he was headed, and Defendant responded, "Missouri." When asked to be more specific, Defendant just said "to meet up with some friends in the St. Louis area."

Shortly later, when Officer Mathenia, separately and apart from the Defendant, asked the passenger specifically where in Missouri he was going, the passenger stated, "he was supposed to call some friends on a pay phone."

As a result of the different answers from Defendant and the passenger as to where each was headed in Missouri, Officer Mathenia asked Defendant for permission to search the vehicle. Defendant consented, and Officer Mathenia began a search of the car. Almost immediately, he noticed that the carpet that was underneath the back seat had been pulled away and was very loose. No clothing or luggage was on the back seat. Officer Mathenia lifted up the back seat, which was already loose, and discovered, within recesses hollowed out of the foam of the seat, two large plastic bundles. After removing the bundles from the vehicle, Officer Mathenia placed a small incision in both and discovered marijuana in each. At that time, he placed both Defendant and the passenger under arrest and read them their *Miranda*[5] rights.

Defendant and the passenger were transported to the Bourbon Police Department, and the vehicle was impounded and taken to a secure garage. After Defendant and the passenger were processed at the police department, Officer Mathenia went to the garage to conduct a more thorough search of the vehicle. In a speaker box located in the trunk of the vehicle, he discovered three more plastic bundles of marijuana. The speaker box had wires running from it, but they were

---

**5.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

not hooked up to anything. There were no personal items in the trunk. Noticing that the plastic armrest panels on each side of the rear seat were loose, Officer Mathenia removed them using a screwdriver and found two more bundles of marijuana in the passenger-side rear quarter-panel and one more bundle in the driver-side rear quarter-panel. Each of the eight bundles of marijuana weighed approximately five pounds, and each smelled like axle grease.

At the close of state's evidence, Defendant filed a motion for judgment of acquittal alleging that "the evidence is insufficient as a matter of law to support a finding of guilt," which the trial court overruled. Defendant presented no evidence and, at the close of all evidence, filed a second motion for judgment of acquittal, again challenging the sufficiency of the evidence to support a finding of guilt. The trial court overruled this motion, found Defendant guilty as charged, and later sentenced him to fifteen years in the Missouri Department of Corrections. This appeal followed.

### 4) *Discussion*

In his first point, Defendant asserts that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence in "that the evidence was insufficient to establish that [he] knowingly possessed marijuana." We agree.

To sustain a conviction of possession of a controlled substance with intent to distribute under Section 195.211, the State must have proven (1) conscious and intentional possession of the controlled substance, either actual or constructive; (2) awareness of the presence and nature of the substance; and (3) intent to distribute it.

*State v. Bremenkamp*, 190 S.W.3d 487, 493 (Mo.App.2006), *citing State v. Gonzalez*,

108 S.W.3d 209, 211 (Mo.App.2003). Possession of a controlled substance is defined by Section 195.010(34) as:

[A] person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance[,] possession is sole. If two or more persons share possession of a substance, possession is joint[.]

The possession prong and the knowledge prong of the charged offense are not entirely independent, in that both require proof of the defendant's knowledge of the presence of the controlled substance. *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992). While actual possession alone may provide a reasonable inference of such knowledge, "constructive possession may be shown when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance" and such facts are coupled with "access to and control over the premises where the substance was found." *Id.* While exclusive control of the premises gives rise to an inference of possession and control, joint control "requires some further evidence or admission connecting the accused with the illegal drugs." *Id.*

Such additional evidence includes: the presence of a large quantity of the substance at the scene where the defendant is arrested; routine access to an area where controlled substances are found; nervousness exhibited during the search

of the area; the subject of the controversy in plain view; commingling of the controlled substance with the defendant's personal belongings; and the conduct and statements made by the accused. *See State v. Morris,* 41 S.W.3d 494, 497 (Mo.App. E.D.2000); *State v. West,* 21 S.W.3d 59, 63 (Mo.App. W.D. 2000); *State v. Mishler,* 908 S.W.2d 888, 892 (Mo.App. S.D.1995); *State v. Kerfoot,* 675 S.W.2d 658, 662 (Mo.App. E.D. 1984).

*State v. Johnson,* 81 S.W.3d 212, 215–16 (Mo.App.2002).

Because no evidence of Defendant's actual possession of the marijuana was presented by the State, and the Cavalier where the marijuana was found was jointly occupied, the case at bar offers for consideration only the possibility of constructive possession with joint control, thus invoking the requirement of further evidence connecting the accused with the illegal drugs and—its threshold issue—Defendant's knowledge of the presence of the marijuana.

 The state presented no direct evidence of Defendant's knowledge of the presence of the marijuana in the Cavalier or otherwise connecting Defendant with it. "[A]bsent a confession, such knowledge is often not susceptible of direct proof." *State v. Collins,* 601 S.W.2d 640, 641 (Mo. App.1980). However, it is well within the province of the fact-finder to infer such knowledge from circumstantial evidence. *Id.; State v. Sours,* 946 S.W.2d 747, 752 (Mo.App.1997). "When determining whether sufficient further evidence con-

nects a defendant to the controlled substance, we consider the totality of the circumstances." *Bremenkamp,* 190 S.W.3d at 494, *citing Purlee,* 839 S.W.2d at 589. On the other hand, "[a] criminal conviction cannot be based upon probabilities and speculation." *McMullin,* 136 S.W.3d at 573, *citing State v. Boyd,* 91 S.W.3d 727, 734 (Mo.App.2002). The recurring question for our determination in this case is: At what point does the process of drawing reasonable inferences from the totality of the circumstantial evidence cross out of that realm and over into the realm of probabilities, speculation, and conjecture? [6]

Defendant claims that "[t]he only additional evidence the State presented to connect [him] to the marijuana was the fact that at the time of the stop he was driving the Cavalier, and there was a large quantity of marijuana, approximately 40 pounds, hidden in various places in the car." Citing *Johnson,* 81 S.W.3d at 216, Defendant contends that this evidence is not sufficient to prove that he knew of the presence of the marijuana in the Cavalier. In *Johnson,* the defendant was one of two passengers in a Ford Expedition pulled over for a traffic violation on I–44. *Id.* at 214. A search of the Expedition revealed thirty-eight pounds of marijuana hidden in the "factory voids." *Id.* Johnson claimed on appeal that the evidence was insufficient to establish that he knowingly possessed the marijuana. *Id.* The evidence that tended to implicate Johnson was the rental agreement for the Expedition was in his name, he was nervous, and a large quantity of

---

**6.** Missouri case law has at times cast this inquiry in terms of prohibiting "piling inference upon inference" or "inference stacking." *State v. McMullin,* 136 S.W.3d 566, 572 n. 5 (Mo.App.2004). This mechanical analysis has proved unsatisfactory because: "[T]he underlying question is whether the conclusion hypothesized can fairly be drawn from the prov-

en facts by reasonably intelligent minds. The strength of the relation between the factual premise and the conclusion is all important, even though one or more 'inferences' intervene." *Id., quoting Wills v. Berberich's Delivery Co.,* 345 Mo. 616, 134 S.W.2d 125, 129 (1939).

marijuana was hidden inside the factory voids of the vehicle. *Id.* at 217. There was no evidence that there was any discernable odor in the vehicle emitted by the marijuana or by anything used to mask the smell. *Id.* at 216. The evidence was held to be insufficient to support Johnson's conviction. *Id.* at 217.

The state attempts to distinguish *Johnson* from the instant case only on the basis that in the former there was no evidence of the smell of the marijuana or of a masking agent in the vehicle, while in the latter "there was a discernable odor emitted by the axle grease covering the bundles of marijuana and masking the otherwise pungent smell." This statement in the state's brief is not supported by any citation to the record as required by Rule 84.04(i). A review of the trial transcript reveals that the reason for the state's omission is that the statement is not supported by the record. The only reference in the testimony to the smell of the axle grease is in Defendant's cross examination of Officer Mathenia as follows:

Q. Now in your training and experience you know what marijuana smells like?

A. Yes I do.

Q. You would agree that oftentimes marijuana is detected because of its smell?

A. Yes.

Q. But the marijuana that you found in this car that belonged to Mr. Mjuarez actually smelled like axle grease?

A. Yes.

\* \* \* \*

Q. And all of the bundles that you found in the door panels or the speaker box, they smelled like axle grease?

A. Yes mam.

While this is direct evidence that the marijuana hidden in the Cavalier smelled like axle grease, it does not give rise to any inference, much less a reasonable inference, that Defendant or anyone sitting in the driver's seat of the passenger compartment of the vehicle could detect the aroma given off by the axle grease around the hidden marijuana and otherwise differentiate it from the axle grease that is normally and routinely found in a vehicle. Any attempt to infer such detection based upon the mere presence of the axle grease without evidence connecting it to the olfactory senses of a person in Defendant's position in the Cavalier is sheer speculation and conjecture. As such, the state has failed to distinguish this case from *Johnson*.

Defendant next cites *State v. Mercado*, 887 S.W.2d 688 (Mo.App.1994), in support of his contention that the state failed to prove his knowledge of the presence of the marijuana in the Cavalier. In *Mercado* the defendant was a passenger riding in a van stopped on I–44 for a traffic violation. The van was registered to the driver, and in a consensual search almost 200 pounds of marijuana were found in packages concealed behind the wall panels and shaped to conform to the recesses. *Id.* at 689–90. Mercado claimed on appeal that the evidence was insufficient to show that he knew the marijuana was there. *Id.* at 690. The only direct evidence connecting Mercado with the drugs was that he was a passenger in the van and had been assisting the owner in driving, but there was no evidence that he had access to the areas behind the wall and door panels, and the van did not belong to him. *Id.* at 691–92. There was "no discernable odor in the passenger compartment of the van, either emitted by the marijuana or something used to mask an otherwise pungent smell." *Id.* The only place that the officer could detect an odor was from six inches away and from a small gap between the bottom

of a wall panel and the floor of the van in the rear-most portion of the cargo area. *Id.* at 692. As a result, this Court held the evidence to be insufficient to support Mercado's conviction. *Id.*

The state also seeks, in the same manner as *Johnson,* to distinguish *Mercado* from the instant case based upon the smell of the axle grease. This proffered distinction is without any merit for the reasons set forth in our preceding discussion on *Johnson.* Here, there was no evidence that the smell of the axle grease was discernable from any distance away from the marijuana.

The state next argues that in *Mercado* the marijuana was not accessible to the defendant because it was secured behind the walls and door panels, whereas in the instant case the marijuana inside the backseat and rear quarter-panels was easily accessible to Defendant. The state supports this argument by pointing out that the carpet next to the backseat had been pulled out, the backseat was loose, and the wall panels were loose.[7] Yet, there is no evidence in the record that Defendant, sitting in the driver's seat, had any knowledge or awareness of these conditions or that the pulled-out carpet, loose seat, and loose wall panels were so open and obvious that a person sitting in the driver's seat would or could not fail to observe them. Without evidence from which to infer that

Defendant had knowledge or awareness of these conditions,[8] any purported inference that Defendant had knowledge or awareness of the hidden marijuana based upon these conditions would not be based upon fact, but is based simply upon speculation and conjecture. Thus, the state has failed to distinguish the case at bar from *Mercado.*

Defendant also cites us to *State v. Bristol,* 98 S.W.3d 107 (Mo.App.2003) and *State v. Driskell,* 167 S.W.3d 267 (Mo.App.2005), in support of his contention that the evidence was insufficient to prove he had knowledge of the presence of the marijuana in the Cavalier. In Bristol, the defendant was stopped while driving a car he had borrowed the night before. Bristol, 98 S.W.3d at 110. Bristol's driver's license had been revoked and the two passengers had outstanding warrants so all three were arrested, and the car was searched incident to arrest. *Id.* "[W]ell under the driver's seat," the officer saw the corner of a plastic bag wedged between the center console and the driver's seat which contained five pieces of crack cocaine. *Id.* Bristol appealed his conviction for possession of a controlled substance and argued that the evidence did not permit a reasonable inference that he knew of and exercised control over the crack cocaine found in the car. *Id.* at 111. Bristol did not

---

7. The state contends in its brief, without citation to the record as required by Rule 84.04(i), that the wall panels were "visibly" loose. Officer Mathenia testified that "[t]he reason for checking behind [the wall panels] was they were already loose." Nothing in the record supports that the looseness was visible. In fact, the loose wall panels were not discovered until after the car had been towed from the highway and Officer Mathenia went to the storage garage to conduct a more thorough search. We also note that even though the state includes the loose wall panels in its "easily accessible" argument, Officer Mathe-

nia testified he had to use a screwdriver to remove each panel.

8. Although not asserted as a factor distinguishing this case from *Mercado,* elsewhere in its brief the state contends that the fact that the wires were unconnected on the speaker box in the trunk supports an inference that Defendant had knowledge of the presence of the marijuana. Like the pulled carpet, loose backseat, loose wall panels, and the axle grease, however, there is no evidence in the record that Defendant had any knowledge or awareness of this condition.

exhibit any signs of a consciousness of guilt. He gave his correct name, he was cooperative, and he did not appear nervous while speaking with the troopers. *Id.* He made no incriminating statements and made no attempt to flee. *Id.* The Western District of our Court held that Bristol's presence in the car and proximity to the drugs alone was insufficient in a joint possession case. *Id.* at 111–12. Therefore, viewed in totality, the facts did not support an inference that the defendant was aware of or had control of the crack cocaine in the car. *Id.* at 111.

In *Driskell,* the defendant was arrested on an outstanding warrant while sitting in the driver's seat of a car parked at a gas station while his companion was washing the car windows. *Driskell,* 167 S.W.3d at 268. Driskell was a co-owner of the car. *Id.* It was searched, and in the console in the middle of the front seat officers found a plastic pouch similar to that used for insurance documents. *Id.* The pouch held a cigarette package which contained a small amount of methamphetamine and marijuana. *Id.* There was joint access to the console by the other co-owner and Driskell's companion and no evidence that Driskell concealed the drug. *Id.* Driskell made no incriminating statements nor did he engage in any suspicious conduct. *Id.* at 270. He did not appear nervous, and he made no attempt to flee when the officer approached. *Id.* The Western District of our court found: "The State failed to show Driskell had any awareness the illegal drugs were hidden in his car." *Id.*

The state claims that the instant case is distinguishable from both *Bristol* and *Driskell,* in that "there were forty pounds of marijuana rather *obviously* concealed all throughout the car, not a baggie with five pieces of crack cocaine wedged under the seat or a small quantity of drugs concealed in a cigarette package found inside another plastic pouch and in the car's console." (Emphasis added). As previously discussed, there is no evidence in the record to support that the pulled-out carpet, the loose backseat, the loose wall panels, or the smell of the axle grease was *obvious.* The common thread in *Johnson, Mercado, Bristol,* and *Driskell* is that the controlled substance in each case, regardless of the amount, was not in plain view, but rather was completely concealed. In each case, there was nothing related to the amount involved that gave rise to a reasonable inference that the defendant knew of the presence of the controlled substance. Likewise, in the instant case, the state does not articulate in any manner how the amount—whether five grams or forty pounds—of a completely hidden controlled substance gives rise to an inference that Defendant had knowledge of its presence.

The state next seeks to distinguish this case from Bristol and *Driskell* by asserting that neither case had any evidence of the defendant's consciousness of guilt, whereas in this case Defendant's statement to Officer Mathenia that he was "to meet up with some friends in the St. Louis area" demonstrated his consciousness of guilt. In support of this theory, the state cites two propositions: (1) false statements to police can give rise to an inference of guilty knowledge, *State v. Allen,* 817 S.W.2d 526, 528 (Mo.App.1991) (when asked by officer for identification, defendant gave officer his brother's name); and (2) inconsistent statements to the police demonstrate consciousness of guilt, *State v. Chaney,* 967 S.W.2d 47, 53 (Mo. banc 1998) (defendant's statement at trial contained numerous inconsistencies with statements he made before trial to police, neighbors, and his wife. When confronted with these inconsistencies defendant explained that all the other witnesses were mistaken as to what he had said).

In applying these principles, the state contends that Defendant's statement is false as compared to the passenger's statement to Officer Mathenia that "he was supposed to call some friends on a pay phone." Such application is misplaced, because the statements are not inconsistent. As to Defendant's statement, Officer Mathenia testified: "When I asked him where at in Missouri he just said to meet up with some friends in the St. Louis area." His testimony as to the passenger's statement was: "When I asked the passenger where at in Missouri, he stated he was supposed to call some friends on a pay phone." These statements are not mutually exclusive in any sense. In other words, the fact-finder could believe the passenger's statement to be absolutely true, and such a belief would not lead to the logical conclusion or inference that Defendant's statement is incorrect or false. The officer asked each independently to be more specific as to where they were going in Missouri. Both responded that he was to meet up with friends. Defendant stated

he was to meet up with his friends in the St. Louis area, and the passenger indicated the exact location where he would meet up with his friends would be determined by calling them from a pay phone. Officer Mathenia may have assumed that Defendant and the passenger were referring to the same set of friends in order to support his perceived inconsistency between the statements, but such supposition is not supported by the record. Nothing in Defendant's statement as compared to the passenger's statement indicates Defendant's consciousness of guilt.

Finally, the state seeks to distinguish this case from *Bristol* and *Driskell* based upon the facts that the Cavalier "was registered to someone in Arizona and [Defendant] was traveling to Missouri, yet he had no clothing, luggage, or personal belongings in the car." [9] The state claims: "This additional incriminating evidence, which was not present in either Bristol or *Driskell*, distinguishes this case and provided sufficient additional incriminating facts to

---

9. Elsewhere in its brief, the state attempts to couple these facts with the judicial acknowledgements that Arizona is "an area which is a known source of drugs" and that I–44 is a "known drug corridor." *State v. Day*, 87 S.W.3d 51, 55 (Mo.App.2002). The issue in *Day* was whether or not an officer had reasonable suspicion to justify extending a traffic stop after the original purpose of the stop had concluded. *Id.* at 53–54. In addressing reasonable suspicion, the court noted: " '[T]he relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.' " *Id.* at 55 (quoting *United States v. Sokolow*, 490 U.S. 1, 10, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1, 12 (1989). While the facts that a vehicle which is registered in "an area which is a known source of drugs" is driven upon a "known drug corridor" may in combination with other information give rise to a *reasonable suspicion* that illegal drugs may be in a vehicle, it does not rise to the level of even probable cause that any illegal drugs are in fact in the vehicle,

much less a reasonable inference upon which a reasonable fact-finder could find beyond a reasonable doubt that a defendant had knowledge of the presence of an illegal drug otherwise hidden from plain view in the vehicle which he was driving. The only inference that can be drawn from these circumstantial facts is that a vehicle which is registered in "an area which is a known source of drugs" and which is being driven upon a "known drug corridor" is that a *greater probability* exists for the presence of illegal drugs in that vehicle as opposed to the *probability* of the presence of illegal drugs being found in a vehicle not registered in such an area or not driven upon such a corridor. *Day* stands for the proposition that such a probability is a factor supporting a finding of reasonable suspicion to justify extending a traffic stop, however, because "[a] criminal conviction cannot be based upon probabilities," *State v. Boyd*, 91 S.W.3d 727, 734 (Mo.App.2002), *Day* does not apply to an analysis of the sufficiency of the evidence to support a finding of guilt.

buttress the inference that Appellant knew about the marijuana and had control over it." The fault in the state's logic is that the lack of clothing, luggage, or personal items in the car is only significant in relationship to the length of the Defendant's trip in the car. *See U.S. v. Lochan*, 674 F.2d 960, 966 (C.A.Me., 1982) (long trip including overnight stay combined with no luggage or personal items gives rise to inference of guilty knowledge). There is no direct evidence in the record as to the duration of Defendant's trip in the Cavalier. The circumstantial fact that the Cavalier was registered in Arizona gives rise to the inference that at some point in time it was physically located in Arizona. However, there is nothing in the record to indicate when the vehicle was last in that state. Thus, any inference that the Cavalier had, immediately prior to the stop on I–44, come directly from Arizona is not supported by any fact and, as such, is nothing more than speculation. Even if it was an acceptable inference, which it is not, it certainly does not support the further inference that Defendant himself traveled in the Cavalier from Arizona to Missouri immediately prior to the stop.

The circumstantial fact that Defendant stated he was going to Missouri gives rise to the inference that his trip was initiated from somewhere outside of Missouri, but nothing in the record discloses that location. There are many locations outside of the state of Missouri from which Defendant could have initially entered the Cavalier and traveled over I–44 toward St. Louis without requiring the necessity of luggage or accompanying personal items. Because of this, the lack of any luggage or personal items combined with the lack of any evidence as to the origin of Defendant's trip to Missouri actually support the inference that Defendant was not on a lengthy trip-just the opposite inference from which the State asserts should be drawn from the fact that the Cavalier was registered in Arizona. Because of these conflicting inferences, these additional facts cannot support a reasonable inference that Defendant had knowledge of the presence of the marijuana in the Cavalier and, therefore, do not distinguish this case from Bristol and *Driskell*.

Under Missouri law, appellate courts do not review what evidence was absent, but instead review the sufficiency of the evidence that was presented. *State v. Brooks*, 158 S.W.3d 841, 848 (Mo.App. 2005). In reviewing the evidence presented we "cannot supply missing evidence or give the State the benefit of unreasonable, speculative, or forced inferences." *McMullin*, 136 S.W.3d at 572, *citing State v. Whalen*, 49 S.W.3d 181, 184[3] (Mo.banc 2001). With these principles in mind, the evidence in the case at bar supports that Defendant was present with another person in the Cavalier at the time of the stop on I–44 and that at that time the Cavalier had marijuana concealed inside its backseat, rear quarter panels and trunk. For the reasons previously set forth in this opinion, the evidence was insufficient to prove that Defendant had knowledge or awareness of the presence of the marijuana hidden in the Cavalier. Without such proof, the evidence was insufficient to support Defendant's conviction. *Driskell*, 167 S.W.3d at 270; *Bristol*, 98 S.W.3d at 112; *Johnson*, 81 S.W.3d at 217; *Mercado*, 887 S.W.2d at 692.

### 5) *Decision*

We reverse the judgment and remand with directions that Defendant be discharged.

BATES, P.J., C.J., and BARNEY, J., concur.