**CITY OF KANSAS CITY, Missouri, Respondent,**

v.

**William HEATHER, Appellant.**

**No. WD 68653.**

Missouri Court of Appeals, Western District.

Jan. 20, 2009.

---

Michael R. Rinard, II, Kansas City, MO, for appellant.

Megan Fuller Pfannenstiel, Kansas City, MO, for respondent.

Before JOSEPH P. DANDURAND, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

William Heather appeals his conviction of a municipal charge of harassment following a trial *de novo*. He claims that the evidence was insufficient to support his conviction on the charge stated in the information. The judgment of conviction and sentence is vacated.

## Background

William Heather was charged with harassment in violation of a Kansas City municipal ordinance. The "violation notice

and information" charged that he intentionally made a telephone call to Kelly Lester[1] and "threaten[ed] to commit a felony, to wit, stated he would kill her," in order to harass, annoy and/or abuse her. Heather was tried in municipal court and found guilty. He was sentenced to 180 days in jail. Heather then filed an application for trial *de novo*.

At the bench trial, Kelly Lester testified that in August 2006, she received a threatening telephone message and text message from Heather, whom she did not know. The telephone message was played for the court and introduced into evidence. It said, in part, "you can get this straight if you're someone I think I know, right and you can go to prison for the rest of your f—ing lives and never see your children again." The message continued: "I'm getting ready to put the shammy on everybody you f—ing know and everybody you f—ing ever even talk to." The message then stated, in even more vulgar and offensive language, basically that anyone she has ever been associated with, and her friends, are "going to jail."[2] Kelly Lester testified that the message "frightened" her.

The text message, which Kelly Lester received a day or two later, was introduced and read into the record. It stated: "If you're who I think you are, we need to talk. Well, you need to talk to me and get this straight, or you'll be sitting for 60 years ... thinking with the boys in your group, trying to be nice."[3] Kelly Lester

said this made her feel "even more frightened."

On cross-examination, Kelly Lester acknowledged that there was nothing in either of the messages that indicated or stated "that he would kill [her]." On redirect, the City suggested that "one of the messages stated that he would put a shammy" on Kelly Lester. This suggestion was incorrect in that the message said that the speaker would "put the shammy" on "everyone [Ms. Lester] knew" or "talked to." When asked if she knew what that meant, Ms. Lester said someone had explained to her that it means "somebody is going to harm you or kill you." No other evidence was offered as to what the term "shammy" meant.

The City also presented the testimony of Detective Benjamin Caldwell, who investigated the case and completed the "violation notice and information" charging Heather with harassment. Caldwell stated: "I believe the male voice on [the telephone message] identified himself as William Heather, threatened to commit a felony, [and] threatened to kill the victim, if I recall."

Heather did not present any evidence. He moved for judgment of acquittal, arguing that there was no evidence that he ever threatened to kill Ms. Lester. The City countered that the statement that "he would put a shammy on *her*" (sic) was "threatening enough," and that he did threaten to commit a felony "by putting a shammy on someone."

1. Kelly Lester is not the real name of the person receiving the messages mentioned herein. The summons alleged the correct name.

2. We have spared the reader some of the purposeless vulgarities and obscenities included in that inane, but offensively worded communication, which indicated that Ms. Lester's friends were "going to jail."

3. A photograph of the actual message was admitted into evidence. It read: "If your who i think your we need 2 talk well u need 2 talk 2 me & get this straight or youll b siting 4 60 yrs thinkin with the BOYS in ur group tryn2bnice."

The court found Heather guilty. Heather filed a motion for judgment of acquittal or motion for new trial, and the City filed a response. The court denied Heather's motion and sentenced him to 180 days in jail. This appeal follows.

## Standard of Review

 Violations of municipal ordinances are quasi-criminal in nature. *City of Kansas City v. McGary*, 218 S.W.3d 449, 452 (Mo.App.2006) (*citing Strode v. Dir. of Revenue*, 724 S.W.2d 245, 247 (Mo. banc 1987)). Nevertheless, guilt must be proven beyond a reasonable doubt and the rules of criminal procedure apply. *Id.* Furthermore, ordinance provisions imposing penalties are strictly construed against the municipality and will not be extended by implication. *Id.*

 We review a challenge to the sufficiency of the evidence to support a conviction in a court-tried case the same as in a jury-tried case. *State v. Gonzalez*, 235 S.W.3d 20, 24 (Mo.App.2007). Our review is limited to determining whether the evidence was sufficient for a reasonable fact-finder to find each element of the crime beyond a reasonable doubt. *Id.* We view the evidence and all reasonable inferences in the light most favorable to the verdict and disregard any contrary evidence and inferences. *City of Montgomery v. Christian*, 144 S.W.3d 338, 340–41 (Mo.App. 2004). We will not "supply missing evidence or give the State the benefit of unreasonable, speculative, or forced inferences." *Gonzalez*, 235 S.W.3d at 25.

## Discussion

Heather contends that his conviction for harassment is not supported by the evidence. He says the City failed to show that he threatened to kill Kelly Lester as charged in the information.

The ordinance Heather was charged with violating provides in part: "It shall be unlawful for any person, for the purpose of frightening or disturbing another, to: (1) Communicate by telephone a threat to commit any felony[.]" Section 50.159(1), Revised Ordinances of Kansas City, Missouri. Section 50.159 ordinance reads in its entirety:

It shall be unlawful for any person, for the purpose of frightening or disturbing another, to:

(1) Communicate by telephone a threat to commit any felony;

(2) Make a telephone call using any coarse language offensive to one of average sensibility;

(3) Make a telephone call anonymously, or giving a spurious name; or

(4) Make repeated telephone calls to another.

The violation notice and information specifically alleged that Heather:

Did intentionally make a telephone call to [Kelly Lester] [further description of victim], and *threaten to commit a felony*, to wit, stated he would kill her, which was reasonably calculated to harass, annoy and/or abuse [Kelly Lester].

(Emphasis added.)

 The City has the burden of proving each and every element of a criminal offense, and its failure to do so requires reversal of any conviction obtained. *See State v. Bromley*, 840 S.W.2d 288, 289 (Mo.App.1992). In order to convict Heather of harassment, as charged, the City had to prove that he communicated a threat to commit a felony for the purpose of frightening or disturbing Kelly Lester and that he threatened to kill Kelly Lester, which was the felony identified in the information. Heather says there was no evidence of a threat to kill. We agree.

Neither the telephone message nor the text message introduced at trial contained a threat to "kill" Kelly Lester. The City elicited no testimony from Kelly Lester on direct examination that Heather threatened to kill her. On cross-examination, she acknowledged that neither of the messages indicated or stated that he would kill her. However, the actual message was that he would "put the shammy on everybody" she knew and "everybody" she ever talked to; there was no threat to "put a shammy" on her.

In any event, there was no evidence, apart from what Lester said someone had told her, as to what it means "put a shammy on" someone. At oral argument, counsel for the City conceded that a search of linguistic resources, internet and otherwise, including those related to slang, reveals that the phrase "put a shammy on" has no understood meaning. There is no indication that it means to "kill" or harm someone. Whatever the detective or someone else might have thought the term means is immaterial; the question is whether there is evidence that the phrase is reasonably understood as a threat to kill.

The City suggests that even without the description of the specific felony charged— i.e., he "stated he would kill her"—the information charging Heather with threatening to commit "any felony" is sufficient because it tracks the language of the ordinance. See, e.g., City of Kansas City v. LaRose, 524 S.W.2d 112, 116 (Mo.1975) (municipal ordinances are not held to the same strictness as criminal prosecutions; a "complaint is ordinarily sufficient if it describes the act complained of in the language of the ordinance"). The City says, "[g]iven the many threats … in the [two messages], the Court could infer [that] at least one … was a threat to commit a felony."

■ The City does not specify the particular felony Heather threatened to commit. The City also presents no authority indicating that we are free to simply overlook the fact that Heather was charged with making a threat to kill and yet there was no evidence to that effect. See State v. Gheen, 41 S.W.3d 598, 602–03 (Mo.App. 2001) (purpose of an indictment or information is to provide due process notice to the accused of the charges against him so that he may prepare an adequate defense). While it is true that "an information charging an ordinance violation is not tested by the same degree of strictness and particularity as is one charging a criminal offense, it must allege specific facts amounting to a violation in order to be sufficient." City of Joplin v. Graham, 679 S.W.2d 897, 899 (Mo.App.1984). The applicable Supreme Court Rule requires an information in an ordinance violation case to "[s]tate plainly, concisely, and definitely the essential facts constituting the ordinance violation charged, including facts necessary for any enhanced punishment[.]" Rule 37.35(b)(2); see also Rule 23.01(b)(2) (criminal procedure rule setting forth the same requirements for any felony or misdemeanor indictment or information).

■ While the City could have sustained a conviction of Heather under subsection (2) of the ordinance, which makes it unlawful to "[m]ake a telephone call using any coarse language offensive to one of average sensibility," we are not dealing with that charge in this case. We are here dealing with the charge of making a threat to commit a felony, to wit, the threat to kill Ms. Lester, under subsection (1). Obviously, subsection (2) is not subsumed within subsection (1). Because there was no

amendment of the charge in the municipal court or the trial de novo, the conviction under subsection (1) cannot be sustained. Though Heather's communications were entirely uncivilized and reprehensible, the City introduced no evidence that Heather threatened to kill Ms. Lester. The judgment of conviction and sentence is vacated.

All concur.