**STATE of Missouri, Respondent,**

v.

**Luis Enrique ZETINA–TORRES, Appellant.**

**No. WD 74441.**

Missouri Court of Appeals, Western District.

March 5, 2013.

As Modified April 30, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 2013.

Application for Transfer Denied June 25, 2013.

Timothy A. Blackwell, Jefferson City, MO, for respondent.

Rosemary E. Percival, Kansas City, MO, for appellant.

Before Special Division: GARY D. WITT, Presiding Judge, THOMAS H. NEWTON, Judge and ZEL M. FISCHER, Special Judge.

GARY D. WITT, Judge.

This appeal arises from a jury conviction of trafficking in the second degree. Appellant Luis Enrique Zetina–Torres ("Zetina–Torres") asserts three points of error on appeal. He asserts (1) that the State's evidence was insufficient to support his conviction because the evidence did not establish beyond a reasonable doubt that he knew or was aware of the presence of methamphetamine or that he acted together with another; (2) that there were several errors relating to late disclosure of evidence and late witness endorsement; and (3) that the trial court erred in allowing the State to elicit an inadmissible hearsay statement from a trooper.

We reverse and remand.

## FACTUAL AND PROCEDURAL HISTORY [1]

Appellant Luis Enrique Zetina–Torres ("Zetina–Torres") was charged with trafficking in the first degree under section 195.222.9.[2] He was convicted by a jury of the lesser-included offense of trafficking in the second degree under section 195.223.9 and received a life sentence.

### Zetina–Torres's arrest

The main witness for the State was Missouri State Highway Patrol Trooper Brooks McGinnis. McGinnis was an eleven-year veteran of the Highway Patrol. He was working with the criminal interdiction unit, meaning he was conducting traffic enforcement with an emphasis on more serious criminal behavior that might be occurring during traffic stops. His experience included 171 hours of classroom instruction and 550 hours of practical training, significant training and experience in methods of drug transportation, and approximately 600 arrests for controlled substance offenses.

On July 16, 2010, McGinnis was working a "ruse checkpoint" at the Route EE and K exit on Interstate 70 in Saline County. The ruse checkpoint is a highway patrol technique that involves placing signs on the interstate advising that there was a drug checkpoint ahead when in fact no such checkpoint exists. There was a second set of signs that stated that a drug dog was in use, and the signs were in Spanish and English. Flares were placed in front of the signs, which were staggered on the shoulder. A patrol car was sitting in the median with its lights activated. McGinnis testified that the signs were positioned on Interstate 70 because it is a known drug corridor. The purpose of the ruse checkpoint was to cause those involved in illegal activity to exit prior to arriving at what they believed to be a drug checkpoint and in doing so draw attention to themselves. The location was chosen because there was an exit that had no services for motorists (e.g., gas stations, restaurants) prior to the ruse checkpoint. Officers watched to see whether motorists would use the exit in an attempt to avoid the ruse checkpoint.

While the ruse checkpoint was in place, a black Nissan pickup truck passed the checkpoint signs and exited the interstate. McGinnis followed the truck. McGinnis conducted a routine computer check of the vehicle and learned it was registered in Kansas City.

Eventually, the vehicle stopped at Highway 20 and remained there for what McGinnis described as "an unusual amount of time." McGinnis then followed the vehi-

---

1. "We view the facts in the light most favorable to the verdict." *State v. Ferdinand*, 371 S.W.3d 844, 847 n. 1 (Mo.App. W.D.2012).

2. All statutory references are to RSMo 2000 as supplemented unless indicated otherwise.

cle east on Highway 20 toward the City of Marshall. After several miles, McGinnis noticed that the vehicle did not slow down when it reached the Marshall city limits, at which point he activated his radar and determined that the vehicle was exceeding the posted speed limit. McGinnis then activated his emergency lights and siren and stopped the vehicle.

The driver, Zetina–Torres, apologized for speeding and said he did not realize the speed limit had decreased. Zetina–Torres did not have a driver's license but gave McGinnis an identification card from Mexico. Zetina–Torres also gave McGinnis the vehicle insurance card, which listed Mardonio Benitez and Hugo Rivera as the insured parties. Zetina–Torres was accompanied by one passenger, Roberto Maldonado, who provided a "Mexico consulate card."

Both men appeared nervous and avoided eye contact with the trooper. As McGinnis talked with both the driver and the passenger, he noticed a strong odor of cologne-scented air freshener coming from inside the pickup. McGinnis testified that often people transporting drugs will try to mask the odor of the drugs with another odor. McGinnis also noticed that there was a single key in the ignition, and, in McGinnis's experience, drug traffickers often use only a single key because they do not want their house or personal keys passed off when they deliver the vehicle to another.

McGinnis asked Zetina–Torres to have a seat in his patrol vehicle. While he was talking with Zetina–Torres in the police vehicle, McGinnis conducted a routine computer check of Zetina–Torres and Maldonado. Zetina–Torres told McGinnis that he borrowed the vehicle from his friend, Mardonio, who was from Kansas City. Ze-

tina–Torres told McGinnis that he and "Berto" (Maldonado) were traveling to get a Ford pickup from a friend and that they were going to work on its engine. McGinnis asked which city they were visiting and the name of the friend they were to meet. McGinnis testified that Zetina–Torres paused several moments, mumbled, then stated he was going to Marshall. But Zetina–Torres never identified the name of the friend, even after McGinnis asked a second time.

McGinnis noticed that Zetina–Torres would not make eye contact when he was talking. Also, McGinnis said there seemed to be a delay in Zetina–Torres's responses even though Zetina–Torres had no trouble understanding and speaking English.[3] McGinnis also noticed that Zetina–Torres appeared to be wearing "nicer clothing, not clothing that I would use for working on a vehicle's engine" and that Maldonado was wearing sandals.

McGinnis's computer check determined that Maldonado's license was suspended and that there was a warrant for his arrest. While Zetina–Torres was still in McGinnis's vehicle, Zetina–Torres said that he had known Maldonado for about a year, but he was not able to tell McGinnis any additional information about Maldonado. He did not even state Maldonado's last name, referring to him as only as "Berto." Despite not knowing Maldonado's last name, Zetina–Torres knew that Maldonado's license was suspended but stated he nonetheless would not be driving the pickup they were planning to fix because he just came along for the ride.

All during this conversation, Zetina–Torres avoided eye contact, continued to look out the window, and had delayed responses to simple questions. McGinnis was suspicious of both suspects and asked Zetina–

**3.** Zetina–Torres was provided a translator at trial.

Torres whether he possessed any marijuana, methamphetamine, cocaine, heroin or weapons. Zetina–Torres responded "no, you can check." McGinnis clarified consent by asking whether he could search the vehicle, and Zetina–Torres answered "yes."

Before searching the vehicle, McGinnis exited his patrol car and had a conversation with Maldonado. McGinnis told Maldonado that there was a warrant for his arrest and asked where the two were going. Maldonado told McGinnis they were going to Sedalia to see Zetina–Torres's friends. Maldonado's answers were inconsistent with Zetina–Torres's, so McGinnis asked Maldonado whether they were going to Marshall or Sedalia. Maldonado again replied Sedalia. Maldonado did not mention needing to work on or pick up a truck and said he did not know the name of Zetina–Torres's friends. Also, while Zetina–Torres had said he had known Maldonado for about a year, Maldonado said they had known each other two or three months.

McGinnis returned to his patrol car and advised Zetina–Torres that Maldonado's statements were inconsistent with the information he had provided. Zetina–Torres told McGinnis that he had not informed Maldonado about working on the pickup truck.

McGinnis then searched the pickup and noticed that the tailgate was locked and would not come down. The bed liner on the left-rear corner extended outside of the bed of the pickup. Behind the lip of the bed liner, McGinnis located a plastic bag that contained a large quantity (438.74 grams) of what he field tested and later confirmed to be methamphetamine. The wholesale value of the methamphetamine was $18,000 to $20,000. Also in the truck was a box of Tide detergent inside a plastic bag. McGinnis testified that drug traffickers hide large amounts of cash in detergent to mask the smell from police dogs.[4]

Both Zetina–Torres and Maldonado were placed under arrest and the remainder of the vehicle was searched. A laptop computer and a TomTom GPS device were seized from the vehicle. The GPS displayed a Sedalia address along with the address, 7100 Longview Road, Kansas City, Missouri. The Kansas City address matched that of the registered owner of the vehicle, Mardonio Benitez. A text message on Zetina–Torres's prepaid cell phone, which was seized, also contained the same Kansas City address.

Zetina–Torres was carrying a wallet. McGinnis photocopied a "moneygram card" at the jail and returned the wallet to be held with Zetina–Torres's property. The name on the moneygram card was "Mardonio Cordova–Benitez."

### Late Disclosures

Zetina–Torres was indicted on September 27, 2010. On October 1, 2010, defense counsel filed a request for disclosure of, *inter alia*, the names of the State's witnesses, expert reports, and "any books, papers, documents, photographs or objects, which the State intends to offer into evidence at the hearing of [sic] trial or which were obtained from or belong to the Defendant." That request followed Rule 25.03(A)(6), set out below. Zetina–Torres also requested the "names and last known addresses of persons whom the State intends to call as witnesses at any hearing or at the trial, together with their written or

---

4. There was no evidence that cash or anything other than detergent was located in the box of Tide.

recorded statements, and existing memoranda reporting or summarizing part or all of their oral statements." That request followed Rule 25.03(A)(1), set out below.

On April 11, 2011, the court set the case for trial, starting on July 27, 2011. That was the first and only trial setting in this case. On May 3, 2011, the State provided a written response to the defense counsel's request for discovery. On one line of its response, it noted that it was disclosing a photograph of Zetina–Torres's empty wallet and a "moneygram card" bearing Benitez's name. On a separate line of the response, the disclosure list noted an insurance card. The list also included Nicholle Rhodes, a criminologist, as an expert on fingerprint analysis. Rhodes had been endorsed as an expert witness who had prepared a report stating she had found no prints of value on the package of methamphetamine.

On July 11, 2011, the trial court considered the State's motion to endorse an expert witness, Officer Troy Blunt, who was expected to testify regarding the street value of the methamphetamine seized from the truck and also about methods used by drug traffickers. The court initially granted the State's motion for the late endorsement of the witness, but two days before trial, on July 25, 2011, the court reconsidered and overruled the motion to endorse Blunt because the endorsement was too close to trial, particularly given the severity of the offense and the potential of a life sentence. The trial court stated that "it doesn't pass the smell test to me" and the State should have endorsed the witness earlier.

At the same hearing, two days before trial, defense counsel advised the court that just that afternoon the State had disclosed a packet of documents it intended to introduce at trial as business records. Defense counsel had received the documents just that afternoon, but four days earlier on July 21, 2011, the State had filed an application to late endorse a records custodian from the Kansas City Police Department to establish that "an individual arrested February 26, 2010 for driving while suspended by the Kansas City Police Department and convicted of that offense . . . was the defendant."

Around the time of Zetina–Torres's arrest, which was July 16, 2010, McGinnis had run a computer check on the name "Mardonio Benitez" but did not get a response showing a Missouri driver's license in that name. McGinnis ran another check the week before trial and obtained a driving record, but no license under that name. Benitez's driving record showed a June 12, 2010 conviction and the address of 7100 Longview Road, Kansas City. McGinnis provided that information to the prosecutor.

The June 12, 2010 conviction stemmed from an incident in February 2010. Mardonio Benitez had been arrested and booked into the Kansas City Police Department Detention Unit. He had a "Carolina" driver's license or identification card. Benitez was photographed and fingerprinted when he was booked into the jail. He was held overnight, arraigned the next day, and released with a court date. The booking photograph from that arrest appeared to be Zetina–Torres.

The documents to be introduced by the records custodian who was endorsed on July 21, 2011 concerned Benitez's February 2010 arrest and the disposition of that charge in the Kansas City municipal court. The documents contained a mug shot of the person booked as Benitez, which closely resembled Zetina–Torres, as well as fingerprints, booking information, the tickets from the 2010 arrest, and records regarding the disposition of the charge. As noted above, the truck containing metham-

phetamine that Zetina–Torres was driving on July 16, 2010 was registered to Mardonio Benitez. When he was stopped for the trafficking charge, Zetina–Torres had told the arresting officer that he had borrowed the truck. This evidence was being offered to show that Zetina–Torres was in fact the owner of the truck, contrary to his statement to McGinnis. This evidence was being used to help establish Zetina–Torres, as the owner of the truck, had knowledge of the drugs hidden in the truck.

The State commented that around July 21, 2011, it started trying to obtain the records from the Kansas City arrest because it had received the photograph of "Benitez" from Jackson County and believed that Benitez and Zetina–Torres were the same person. Defense counsel argued at the hearing that the evidence should be excluded due to its late disclosure or alternately that Zetina–Torres should be granted a continuance to investigate Benitez's identity and physical discrepancies, height and weight, listed in the records. Defense counsel also wanted to contact the attorney who represented Benitez at the court appearance on the Kansas City charge, arguing that the lawyer would "back it up if the [the State sends] an officer to investigate." The trial court stated that the lawyer could be subpoenaed. Defense counsel argued that he needed time to find the attorney and that the late disclosure left him just one day to investigate the matter. The court denied Zetina–Torres's motions for exclusion of the evidence and denied his request for a continuance, noting "[y]ou guys probably consider this to be inconsistent, but I think the subject matter of his testimony quite a bit different than Officer Blunt's and I'm going to allow that."

Zetina–Torres's defense counsel filed a motion to reconsider the morning of the trial, explaining that he had not had time to find the attorney from Benitez's municipal court hearing, H.D. Shaver, and that he had no luck in finding other witnesses, such as the arresting officer from the Kansas City matter or others who may have been in the courtroom at the time of the plea on that matter. Defense counsel stated that the contact information for attorney Shaver from the Missouri Bar Association was not a valid address and that the phone was no longer in service.

Defense counsel's theory was that language barriers and papers in the automobile at the time of the arrest on the Kansas City matter caused the officer in the February 2010 arrest to believe that Zetina–Torres was Benitez and mistakenly photographed, fingerprinted and booked him under Benitez's name. According to this theory, the mistake was discovered, Zetina–Torres was released, and Benitez later appeared in person before the municipal court and pleaded to the matter.

In asking the court to deny the State's motion for late endorsement or alternately for a continuance, defense counsel stated also that he possibly would not take the case to trial if his investigation proved that the State was correct. He further argued that the identity of the owner of the truck goes to the "argument of possession of the vehicle, circumstantially therefore possession of the drugs. It's the crux of the case." Defense counsel argued that without a continuance, the State would effectively force Zetina–Torres to testify to explain an issue where they had no time to find other witnesses.

At trial, through records custodian Michael Harper, the State introduced the ticket written to Benitez with the accompanying fingerprint card and the booking information including a photograph resembling Zetina–Torres. Defense counsel did not renew his objection to the admission of these exhibits.

Although Rhodes had been endorsed as a witness on May 3, 2011, the only report Rhodes filed that was disclosed to the defense was a report that concluded that no prints of value were found on the methamphetamine or the packaging in which it was located. But the day before trial, Rhodes signed a new report that summarized the results of her comparison of fingerprints from the February 2010 Kansas City booking document and Zetina–Torres's fingerprints from his arrest on the current charge. She concluded that those two sets of prints were a match. Prior to Rhodes testifying, defense counsel's objection to the admission of any evidence concerning the February 2010 arrest was overruled. Defense counsel objected to Rhodes's testimony consistent with the late-disclosed fingerprint report but did not renew the objection when her report was received into evidence.

The only defense witness was Zetina–Torres. He testified that he was arrested in Kansas City in February 2010 and mistakenly booked as Benitez. He testified that he did not discover the error until he was leaving the jail. He testified that he was told to return to court on April 15, 2010 but never went to court and that he did not know that the case was continued to July 12, 2010. He testified that he gave the ticket to Benitez, who went to court and pleaded guilty to the charge.

Zetina–Torres denied that he ever used Benitez's identification. He stated that both he and Benitez had lived at 7100 Longview in Kansas City but that Zetina–Torres lived there after Benitez had moved. He testified that he had recently found Benitez's expired identification and that he kept Benitez's papers at his shop. He testified that Benitez did not work there, but Zetina–Torres worked on Benitez's vehicles. He testified that Benitez was a customer, not a friend.

Zetina–Torres also testified that he went to Sedalia to look at a car in Sedalia and a motor in Marshall. He testified that he did not know anything about the drugs in the Nissan pickup he was driving. He testified that he took the exit he did because Hugo Rivera, another named insured party for the pickup he was driving, called and told him to, and that he never saw the drug checkpoint signs and knew nothing about it until much later. He testified that he was going to a convenience store in Marshall. He testified that he did not look at the GPS because it was on the passenger's side. He also testified that the records found on his cell phone were not his records because he had changed the microchip or SIM card from his phone. He testified that he did not know that the officer had found drugs and that he did not know he was charged with "having drugs" until he was taken to jail. He testified that he does not use, possess, sell, or deliver or transport illegal drugs to anyone.

During cross-examination, the State elicited that Zetina–Torres bought a Missouri non-driver's identification from an individual in Kansas. The State also presented the contents of Zetina–Torres's wallet from the jail property room. Zetina–Torres admitted that he had Benitez's moneygram card and stated that he used it to smooth putty when he repaired cars. The State also asked Zetina–Torres about a card in his wallet for attorney Bernita Benitez.[5] On the back of the card was a court date of July 12, 2010. Zetina–Torres denied that he had seen the card and said it was stuck to other cards Benitez had given him to hand out to others who may need a lawyer.

5. The record does not indicate whether Berni- ta Benitez is related to Mardonio Benitez.

The State elicited from Zetina–Torres that there were additional papers from Benitez in Zetina–Torres's wallet, including a letter to Benitez, a billing statement for the insurance payments for both the Ford pickup involved in the February 2010 incident and Nissan pickup involved in the July 2010 drug trafficking arrest. The State also presented an identification card from Mexico located in the wallet.

Defense counsel moved for a mistrial based on the State's failure to disclose any of the items from the wallet other than the moneygram card. On appeal, as below, defense counsel argued he was surprised that the State had only provided to him a picture of an empty wallet and the moneygram card in discovery. The disclosure list also notes "insurance card" but it is uncontested that the letter and the papers relating to the insurance payments or billing were not disclosed by the State to Zetina–Torres before trial.

The State argued that defense counsel should have looked in the wallet, which had been in evidence since the day before and which had been in Zetina–Torres's property in the custody of the sheriff at the jail. The State argued that Zetina–Torres knew the items were in his wallet, even if his counsel did not. The State said it had gotten the documents "just a few days ago" and did not disclose them because the State did not know if Zetina–Torres would testify.

The trial court determined that the State should have disclosed the documents pursuant to Rule 25.03(A)(6) because it was required to disclose any papers obtained from Zetina–Torres. The prosecutor appeared to admit that he did not know about the provision in Rule 25.03(A)(6) that required disclosure of any papers obtained from Zetina–Torres. He stated:

If there is an error here—and I am still convinced that there is not—but if there is an error here, it is because that I was not attentive enough to the last line of discovery, the paragraph in the discovery that refers to documents and items that belong to the defendant or were in the possession of the defendant.

The court denied the motion for a mistrial, finding it was questionable whether Zetina–Torres could claim prejudice given that he knew about the items because they belonged to him. The court stated it would allow the parties to make a better record later.

During jury deliberations, the court heard additional argument and evidence on the request for a mistrial. The State offered a letter that Zetina–Torres wrote to the sheriff's department asking for receipts from his wallet so that he could provide them to his attorney. The State indicated that it became aware of the additional items the afternoon of July 26, 2011.

Defense counsel suggested that perhaps the papers were gathered from the car and not from the wallet because they were so thick that it would be difficult to fit them into the wallet, and if they were in the wallet, it would be difficult to put it in a pocket. Defense counsel added that the card for attorney Bernita Benitez indicated that pursuant to the State's earlier discovery, perhaps defense counsel had been seeking the wrong attorney in relation to the February 2010 incident. Defense counsel had been searching for an attorney named H.D. Shaver, listed on the court documents, when perhaps he should have been searching for Bernita Benitez. Defense counsel argued that had the State disclosed these documents or if a continuance had been granted, defense counsel may have been able to find and subpoena the proper attorney.

During deliberations, the jury made three requests for evidence to be sent to

the jury room, one for "the contents of the wallet including the: bill for insurance, Missouri Non driver ID; vehicle insurance card and two traffic tickets from Kansas City." Although the exhibits are apparently mismarked, the record appears to indicate that the court responded by providing the jury the Missouri insurance card, the Kansas City Police Department certified arrest record, and the two index fingerprint from the Kansas City Police Department. As best as can be determined from the record, the jury was not provided the bill for insurance or other evidence used during the State's impeachment of Zetina–Torres because these items were never offered or admitted into evidence.

## ANALYSIS

On appeal, Zetina–Torres asserts three points. He argues (1) that the evidence is insufficient to support a finding of guilt because there was no evidence tying him to the drugs found in the back of the truck, (2) that there were several discovery violations of Rule 25.03 and that resulted in multiple errors in the admission of evidence and/or error in failing to grant a mistrial or continuance, and (3) that the trial court erred in admitting hearsay statements from Maldonado to the officer. Because the trial court erred in failing to grant a continuance for the State's discovery violation, we reverse on that point and need not address the third issue on appeal. To alleviate any concern regarding the attachment of jeopardy, we also address the first point raised regarding the sufficiency of the evidence, which is denied.

## I.

### Late Disclosures and Denial of Exclusion, Continuance, Mistrial

Zetina–Torres alleges several violations of Rule 25.03, relating to the State's duty to disclose. Specifically, Zetina–Torres argues that the trial court abused its discretion and plainly erred both in the admission of evidence and in the denial of a continuance or alternately a mistrial. Zetina–Torres contests (1) the late endorsement of Harper, records custodian from the Kansas City Missouri Police Department, and accompanying records, including evidence against Benitez from the Kansas City Police Department jail and from the municipal court, (2) the testimony and report from criminologist Rhodes linking Zetina–Torres's fingerprint from Benitez's February 2010 arrest to fingerprints taken after Zetina–Torres's arrest for the July 2010 trafficking charges, and (3) documents from Zetina–Torres's wallet from the property room at the jail offered to establish that Zetina–Torres and Benitez were the same person.

### Standard of Review

In review of discovery violations, we must answer two questions: first, whether the State's failure to disclose the evidence violated Rule 25.03, and second, if the State violated Rule 25.03, then what is the appropriate sanction the trial court should have imposed. *State v. Campbell*, 356 S.W.3d 774, 779 (Mo.App. E.D.2011). Review is for abuse of discretion. *State v. Wolfe*, 13 S.W.3d 248, 259 (Mo. banc 2000). "The trial court has discretion to impose sanctions for discovery violations under Rule 25.03." *State v. Taylor*, 298 S.W.3d 482, 502 (Mo. banc 2009) (citation omitted). "A trial court's denial of a requested sanction is an abuse of discretion only where the admission of the evidence results in fundamental unfairness to the defendant." *Id.* "Fundamental unfairness occurs when the state's failure to disclose results in defendant's 'genuine surprise' and the surprise prevents meaningful efforts to consider and prepare a strategy for address-

ing the evidence." *State v. Thompson*, 985 S.W.2d 779, 785 (Mo. banc 1999) (citation omitted).

## Rule 25.03(A)

Zetina–Torres also alleges error in the admission of the testimony of records custodian Harper and criminologist Rhodes, based on the rules of discovery. Error in failing to exclude those witnesses would fall under Rule 25.03(A)(1), which requires the State to disclose:

> The names and last known addresses of persons whom the state intends to call as witnesses at any hearing or at the trial, together with their written or recorded statements, and existing memoranda, reporting or summarizing part or all of their oral statements.

Asserted error under this point also falls under Rule 25.03(A)(6), relating to disclosures by the State to a defendant without a court order. That rule states that the State shall, upon written request of defendant's counsel, disclose:

> Any books, papers, documents, photographs, or objects, which the state intends to introduce into evidence at the hearing or trial or which were obtained from or belong to the defendant.

As noted above, Zetina–Torres filed a discovery request several months before trial that was patterned after these provisions. Although the State provided discovery on May 3, 2011, it made several additions closer to trial. And although there were several late disclosures, the trial court found that the State violated the Rule 23.03(A)(6) only as to its late disclosure of the evidence from Zetina–Torres's wallet. It granted no remedy for that violation.

## The trial court abused its discretion in failing to grant Zetina–Torres's motion for a continuance[6]

 Zetina–Torres argues that the trial court erred in denying a continuance or in excluding all evidence related to the February 2010 arrest because he needed additional time to investigate and to try to find a witness who could testify that Benitez and Zetina–Torres were not the same person.[7] "The rules on pretrial discovery aid the truth-finding aspect of the legal system." *State v. Whitfield*, 837 S.W.2d 503, 508 (Mo. banc 1992) (citation omitted). "The main concern for the trial court is the fundamentally fair response to last-minute evidence." *Id.* "Even if the state's failure to disclose is merely the result of negligence, as opposed to a nondisclosure through deceit or guile, fundamental unfairness can still occur." *State v. Perkins*, 710 S.W.2d 889, 893 (Mo.App. E.D.1986) (citation omitted). Rule 25.03 is clearly intended to allow both sides to know the witnesses and evidence to be introduced at

---

**6.** Some question arose at oral argument as to whether review of the denial of the continuance is for plain error or for abuse of discretion because defense counsel did not object to the admission of the records. After a review of the record, we conclude that the review is for abuse of discretion. First, a defendant can request a continuance unrelated to an alleged discovery violation, and Zetina–Torres properly preserved review of a denial of a continuance. Second, defense counsel made an oral motion at a pre-trial hearing immediately upon learning of the newly disclosed evidence, renewed that objection with a written motion, and presented additional pre-trial argument. "To now rule a waiver of this point and a denial of review would be a hypertechnical application of the requirement of renewing the objection at every stage." *State v. Stillman*, 938 S.W.2d 287, 290 (Mo. App. W.D.1997).

**7.** Defense counsel stated out of the hearing of the jury that based on his investigation Benitez could not be subpoenaed to testify because he had left the Midwest and could not be located.

trial. Rule 25.12 allows the defense to depose any potential witnesses. Rule 25.07 allows both parties to inspect, obtain, test, and copy, or photograph material and information. "Taken together, these rules are designed to prevent surprises." *Whitfield,* 837 S.W.2d at 508. They are also designed to allow proper preparation for trial.

Here, there is no question that Zetina–Torres was surprised by the new evidence. Only six days before trial, the State filed its application to endorse Harper and provided the reason for introducing the Benitez arrest records—that Benitez and Zetina–Torres were the same individual. To further the surprise, the records, which disclosed the potential witnesses, were not provided to defense counsel until late in the afternoon two days before trial. The timing left defense counsel with only *one* full day to try to locate witnesses on the critical element of identity. There is no question that the State violated its duty to disclose by failing to provide Zetina–Torres with crucial documentary evidence of identity relied upon at a trial. This was compounded by the late disclosure of a new expert fingerprint report matching Benitez's fingerprints to Zetina–Torres's fingerprints and further compounded by the complete non-disclosure of documents from Zetina–Torres's wallet.

■ Seeing a discovery violation, we next consider whether the trial court abused its discretion in not granting a continuance or otherwise fashioning another discovery sanction pursuant to Rule 25.18. "[I]mportant evidence may be discovered at the last minute." *Whitfield,* 837 S.W.2d at 508. "In these cases, the trial court must tailor the appropriate remedy to be fundamentally fair to each party." *Id.* In renewing his motion the morning of trial for exclusion of evidence or for a continuance, defense counsel ar-

gued that if he would have had the new information sooner, he might not have taken the case to trial. Defense counsel argued too that the late disclosure of the new information meant he would probably have to put his client on the stand to respond to the newly disclosed evidence. Defense counsel without question was disadvantaged by his inability to investigate the potential witnesses contained in the documents, but also by the overall effect of the untimely disclosures, which necessitated an entirely different defense to a novel and damning prosecution theory. There simply was not sufficient time to prepare to address the new evidence.

Further, defense counsel spent the day before trial searching for the attorney of record from Benitez's municipal court hearing. The contact information for Shaver from the Missouri Bar Association was not current, and defense counsel's efforts to find him in spite of the outdated information proved fruitless. Counsel also demonstrated that he had no luck finding other witnesses, including the arresting officer from the Kansas City incident or others who may have been in the courtroom at the time of the plea on that matter. Even the prosecutor conceded he could not get the officer from the February arrest to come into court on one day's notice.

Moreover, Rule 25.07 allows both parties to inspect, obtain, *test,* and copy, or photograph material and information. Further piling on the prejudice, the State effectively denied Zetina–Torres access to the fingerprint evidence from the reports until the eve of trial and thereby deprived him of his ability to test that evidence. Testing the fingerprint evidence was a feat even the State could not pull off until the day before trial, the same day defense counsel was fruitlessly searching for Shaver. "Simple justice requires that a defen-

dant be permitted to prepare to meet what thus looms as the critical element of the case against him." *State v. Harrington,* 534 S.W.2d 44, 47 (Mo. banc 1976) (citation omitted). *See also State v. Gray,* 230 S.W.3d 613, 616 (Mo.App. S.D.2007) (reversible error where State endorsed criminologist the week before trial in rape case; trial court should have granted motion for continuance); *State v. Spencer,* 49 S.W.3d 221, 225 (Mo.App. S.D.2001) (reversible error where State endorsed defendant's mother the day before trial and motion to continue was denied; last-minute interview by defense counsel not sufficient remedy); *State v. McIntosh,* 673 S.W.2d 53, 54–55 (Mo.App. W.D.1984) (reversible error where State endorsed witness day before trial; defense's moment to interview insufficient cure); *State v. Blake,* 620 S.W.2d 359, 361 (Mo. banc 1981) (reversible error where breathalyzer evidence and defendant's admissions disclosed the day of trial; "morning of trial" interview with witness not a cure); *Perkins,* 710 S.W.2d at 893 (reversible error where State neglected to produce defendant's contradictory alibi statement; trial court should have granted motion for continuance).

In short, where the State had months to prepare its case, the defense had less than 36 hours to investigate and develop a defense to key evidence dropped in its lap. Accordingly, we see distinct fundamental unfairness and surprise which prevented meaningful defense. If this newly discovered evidence were to be admitted at trial, the defense was entitled to a continuance to properly prepare to address it at trial. "[T]he role of a prosecutor is to see that justice is done." *State ex rel. Jackson Co. Prosecuting Attorney v. Prokes,* 363 S.W.3d 71, 85 (Mo.App. W.D. 2011) (citations omitted). "It is as much a prosecutor's duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just

one." *Id.* The trial court thus erred in denying Zetina–Torres's motion for exclusion of the evidence or in the alternative for a continuance, and that denial resulted in defense counsel's impossible scramble to dutifully investigate the case and zealously defend a client facing a potential life sentence.

In so holding, we need not reach the issue of whether the failure to disclose documents from Zetina–Torres's wallet or the failure to disclose the fingerprint report and the complete content of Rhodes's testimony independently constituted reversible error. We nonetheless admonish the State for providing Zetina–Torres with a picture of an empty wallet as part of its disclosures and then faulting defense counsel for failing to investigate the wallet for the additional paperwork that was either in or with it. The record indicates that even the prosecutor did not know about the documents until soon before trial even though they were in the State's possession since Zetina–Torres's arrest but—perhaps worse—that he was unaware of the provision of the rule requiring disclosure of documentary evidence obtained from the defendant. Rule 25.03(A) requires the State to disclose all or part of the information *within its possession or control.* "The duty to disclose includes what is known to the prosecuting attorney or may be learned *by reasonable inquiry.*" *State v. Varner,* 837 S.W.2d 44, 45 (Mo.App. E.D.1992) (emphasis in original). *See also State v. Willis,* 2 S.W.3d 801, 804–805 (Mo. App. W.D.1999) (reversible error where defendant's inculpatory statements were disclosed one day before trial). The prosecutor's argument, which the trial court appears to have found persuasive, that the State should not have been required to disclose these documents because they belonged to the defendant, is disingenuous at best. The rule specifically requires the disclosure of items recovered from the defendant. It is one thing for a defendant to

know that incriminating evidence exists, it is quite another for the defendant to know that the incriminating evidence is in the possession of the State who intends to offer it into evidence against him at trial.

All of the State's late disclosures culminated into an entirely new theory, the absence of which would have cast considerable doubt on the sufficiency of the evidence in the case. The fact the jury requested some of the late-disclosed evidence supports the defense's argument that this newly discovered evidence may have had an impact on the outcome of the trial, thereby establishing prejudice.

This point is sustained.[8]

## II.

### Sufficiency of the Evidence

█ In Point One, Zetina–Torres argues that the trial court erred in overruling his motion for judgment of acquittal, in entering judgment of conviction, and in sentencing Zetina–Torres because the State's evidence did not support a finding of guilt for trafficking in the second degree. Specifically, Zetina–Torres argues that the State did not establish beyond a reasonable doubt that Zetina–Torres knew or was aware of the presence of the methamphetamine found in the truck or that he acted together with or aided Maldonado in committing trafficking in the second degree.

### Standard of Review

"This Court's review is limited to determining whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Miller*, 372 S.W.3d 455, 463 (Mo. banc 2012). The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the decision, disregarding any evidence and inferences contrary to that verdict. *State v. Freeman*, 269 S.W.3d 422, 425 (Mo. banc 2008). Thus, this court cannot weigh the evidence anew because the "fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *Id.* (citation omitted). This court does not act as a "super juror" with veto powers. *Miller*, 372 S.W.3d at 463 (citation omitted). We give great deference to the trier of fact. *Id.*

### Analysis

Section 195.223.9 states: "A person commits the crime of trafficking drugs in the second degree if . . . he possesses or has under his control . . . more than thirty grams of any material, compound, mixture or preparation which contains any quantity of . . . methamphetamine."

The element of second-degree drug trafficking at issue in this case is possession. Section 195.010(34) defines "possessed" or "possessing a controlled substance" as follows:

[A] person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual posses-

---

8. In so reversing, we note that Zetina–Torres was charged with trafficking in the first degree but convicted by a jury of the lesser-included offense of trafficking in the second degree. The United States Supreme Court recently reaffirmed that the "Double Jeopardy Clause is violated when a defendant, tried for a greater offense and convicted of a lesser included offense, is later retried for the greater offense." *Blueford v. Arkansas*, —— U.S. ——, 132 S.Ct. 2044, 2050–52, 182 L.Ed.2d 937 (2012) (reversing and permitting retrial of greater offenses where jury acquitted of greater offenses but deadlocked on lesser-included offenses because "foreperson's report was not a final resolution of anything"). Zetina–Torres thus cannot be retried for trafficking in the first degree. *See Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970).

sion if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint[.]

The State thus had to prove that Zetina–Torres knew the methamphetamine was in the truck and that he exercised control over the drugs through actual or constructive possession. *Id.*; *State v. Driskell*, 167 S.W.3d 267, 269 (Mo.App. W.D.2005). "The possession prong and the knowledge prong of the charged offense are not entirely independent, in that both require proof of the defendant's knowledge of the presence of the controlled substance." *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992). "Both the knowledge and control elements may be proved by circumstantial evidence." *Driskell*, 167 S.W.3d at 269 (citation omitted). "While actual possession alone may provide a reasonable inference of such knowledge, 'constructive possession may be shown when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance' and such facts are coupled with 'access to and control over the premises where the substance was found.'" *State v. Gonzalez*, 235 S.W.3d 20 (Mo.App.S.D.2007), quoting *Purlee*, 839 S.W.2d at 588. "While exclusive control of the premises gives rise to an inference of possession and control, joint control 'requires some further evidence or admission connecting the accused with the illegal drugs.'" *Id.*

In arguing that the evidence was insufficient to support his conviction, Zetina–Torres relies predominantly on *Driskell* and *Gonzalez*. We reversed the conviction in *Driskell*, where the defendant was arrested on an outstanding warrant as he sat in the driver's seat of a car parked at a gas station. *Id.* at 268. The defendant was the co-owner of the car. *Id.* In the console in the middle of the front seat, officers found a plastic pouch that held a cigarette package with methamphetamine and marijuana. *Id.* There was joint ownership and access to the console. Driskell made no incriminating statements nor otherwise acted suspiciously. *Id.* at 270. He did not appear nervous, and he did not attempt to flee. We held that the State failed to prove that the defendant had any knowledge that illegal drugs were hidden in his car. *Id.*

As examples of evidence of incriminating circumstances to establish knowledge, the *Driskell* court listed "statements or actions indicating consciousness of guilt, routine access to the place where the drugs were found, commingling of the drugs with defendant's personal belongings, a large quantity of drugs, or the drugs were in plain view." *Id.* at 269 (citation omitted).

Zetina–Torres relies also on the reversal of a conviction in *Gonzalez*. As in the instant case, in *Gonzalez* the two passengers gave conflicting statements as to where they were going. 235 S.W.3d at 25. After the *Gonzalez* defendant consented to a search of the vehicle, the officer noticed that the carpet in the backseat was loose and discovered 40 pounds of marijuana. *Id.* at 25–26. There, the automobile was not registered to the defendant, and more than that, there was no masking odor or evidence of consciousness of guilt. *Id.* at 30–31. The Southern District reversed the conviction, determining that the State had not produced sufficient evidence that the defendant had knowledge of possession.

 Here, the State produced evidence from which a juror could find that Zetina–Torres was the owner of the vehicle and that he lied regarding his ownership. Guilt may be inferred when the accused attempts to deceive police. *State v. Parsons*, 152 S.W.3d 898, 903 (Mo.App. W.D.2005). The State also produced evidence that Zetina–Torres was nervous, that he kept looking out of the window, and that his answers to simple questions were delayed. "Statements or actions indicating consciousness of guilt" will support an inference of knowledge and control. *State v. Watson*, 290 S.W.3d 103, 106 (Mo.App.S.D.2009).

Further, the State produced evidence that the information Zetina–Torres gave the officer differed from that of Maldonado on topics including how long they had known each other to whether Zetina–Torres knew Maldonado's last name. The amount of drugs recovered was also quite large: 438.74 grams with a street value of $18,000 to $20,000. "The presence of a large quantity of contraband at the scene of the arrest" is another circumstance that will support an inference of guilt. *Id.* Moreover, the State produced evidence that the drugs were found in a location where one could see from the outside of Zetina–Torres's vehicle that the bed liner was amiss. Also, the State produced evidence that McGinnis detected what he believed to be a strong masking odor, that Zetina–Torres had a single key in the ignition, which in his experience is common with the transportation of illicit drugs, that he found a box of Tide, which in his experience is used to mask the odor of large sums of cash, and that Zetina–Torres exited the interstate after signs indicating a drug checkpoint ahead.

 While it is true that a conviction cannot be based on "probabilities and speculation," it is also true that when determining whether sufficient evidence connects a defendant to the controlled substance, "we consider the totality of the circumstances." *Gonzalez*, 235 S.W.3d at 27. "Although isolated facts viewed individually may not support more than a suspicion of guilt, a conviction may rest upon accumulated, inter-dependent facts, no one of which may create more than a suspicion of guilt." *Parsons*, 152 S.W.3d at 905 (citation omitted).

Moreover, Zetina–Torres's own testimony produced further evidence from which a reasonable jury could find him guilty beyond a reasonable doubt. Zetina–Torres testified that the cell phone records recovered from his phone were not his. He also testified that he did not see the drug checkpoint despite McGinnis's description of two sets of staggered signs on the interstate advising that there was a drug checkpoint ahead, with one set of signs stating that a drug dog was in use, with flares in front of the signs and a patrol car in the median with its emergency lights activated. Zetina–Torres's testimony included his explanation of his arrest in connection with Benitez's conviction in Jackson County and why he carried a moneygram with Benitez's name on it, claiming he uses it to smooth automotive body repair putty. The jury was able to witness his credibility and disbelieve his testimony concerning the circumstances surrounding the traffic stop. Zetina–Torres put his credibility on the very issue of whether he used, possessed or sold illegal drugs squarely before the fact finder. The jury was free to disbelieve him when he said that he had no knowledge of the drugs in the truck that he was driving. In short, the jury was free to infer that Zetina–Torres's testimony was false and from that testimony that he knowingly possessed the methamphetamine.

Zetina–Torres argues also that there was insufficient evidence to establish that

he was guilty by acting in concert with Maldonado. But the charging document and the jury instruction were in the disjunctive: both stated that Zetina–Torres was guilty of acting alone or in concert with another. Zetina–Torres's broad argument as to sufficiency of the evidence regarding whether the State proved that he acted in concert with Maldonado does not account for the probability that the jury determined that Zetina–Torres acted alone in possessing the drugs.

This point is denied.

## Conclusion

The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

All concur.