ANGELA T. QUIGLESS, Judge.
I. INTRODUCTION
Michael Sutherland (Defendant) appeals the judgment of conviction entered by the Circuit Court of the City of St. Louis after a jury found him guilty of second-degree domestic assault, section 565.073,[1] and *647 third-degree domestic assault, section 565.074. Defendant claims the trial court erred in denying his: (1) motions for judgment of acquittal because the evidence was insufficient to support his conviction of second-degree domestic assault for choking C.K.; and (2) request for a continuance. We affirm.
II. FACTUAL AND PROCEDURAL BACKGROUND
Viewed in the light most favorable to the verdict, the evidence at trial revealed that Defendant and C.K. had an on-and-off romantic relationship. On the morning of Thursday, August 5, 2010, after having spent the night together, Defendant and C.K. began arguing about whether C.K. had sex with another man. C.K. left Defendant’s house to walk to the Amtrak station, but she called Defendant for a ride when she realized she did not have enough money for the train. Defendant and C.K. resumed arguing when Defendant arrived. On the way back to his house, Defendant told C.K. if she did not tell the truth about sleeping with another man, he would get his gun out. Defendant punched C.K. in the face and side at least eleven times when she would not respond to him. When they arrived at Defendant’s house, C.K. tried to run away but Defendant caught her. They went inside Defendant’s house, where C.K. stayed the rest of Thursday and all day Friday. During that time, Defendant and C.K. did not argue.
On Saturday, C.K. drove Defendant’s ear to the grocery store and called a friend to report she would be coming home that day. When C.K. returned to Defendant’s house, Defendant started another argument with her about the other man. During this argument, Defendant held C.K. up against a wall by her neck and squeezed her neck with his hand. Defendant stopped when someone knocked on the door. As Defendant went to answer it, C.K. ran out the back door and found a police officer.
The State charged Defendant with one count of second-degree domestic assault for attempting to cause physical injury to C.K. by choking her. The State also charged Defendant with one count of third-degree domestic assault for striking C.K. and one count of unlawful use of a weapon. The trial court scheduled a jury trial.
On May 15, 2012, Defendant filed a motion to continue the May 16 trial setting. Defendant alleged C.K. had failed to attend scheduled depositions during the pen-dency of the case. Defendant stated that on Monday, May 14, 2012, he learned the prosecutor, who had been unable to contact C.K., located her on Friday, May 11. Defendant claimed he conducted an interview with C.K. on May 14 that lasted nearly two hours and “resulted in the names and contact information of possible witnesses ... and a story somewhat different than what appeared in the police reports.” Defendant alleged the changes in C.K’s story were “material to the defense and must be further investigated.” Defendant did not identify the possible witnesses or the alleged changes in C.K’s story. Defendant stated he was scheduled to depose C.K. on May 15, the day before trial. The trial court denied Defendant’s motion for a continuance because: “The parties have had sufficient time to prepare. No real prejudice to Defendant shown in aftermath of 5/15/12 victim deposition.”
The trial court conducted a jury trial. The State presented C.K.’s testimony, among other evidence. Defendant filed motions for judgment of acquittal at the close of the State’s evidence and the close of all evidence. The trial court denied both motions.
*648 The jury found Defendant guilty on both domestic assault counts but not guilty on the unlawful use of a weapon count. For the third-degree domestic assault offense, the trial court sentenced Defendant to thirty days’ confinement with credit for time served. For the second-degree domestic assault offense, the trial court sentenced Defendant to seven years’ imprisonment but suspended execution of the sentence and placed Defendant on probation for two years. The trial court later found Defendant violated a condition of his probation. The trial court revoked Defendant’s probation and ordered execution of the seven-year prison sentence. Defendant appeals.
III. DISCUSSION
A. Sufficiency of the Evidence-Second-Degree Domestic Assault
In his first point on appeal, Defendant argues the trial court erred in denying his motions for judgment of acquittal because the evidence was insufficient to support his conviction of second-degree domestic assault. More specifically, Defendant maintains the State failed to prove Defendant attempted to cause C.K. physical injury by choking her because “all of the testimony at trial indicated that there was no obstruction of C.K.’s windpipe and that she was able to breathe freely.” We disagree.
“[T]his Court’s review of the sufficiency of the evidence is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of the defendant’s guilt beyond a reasonable doubt.” State v. Nash, 389 S.W.3d 500, 508-09 (Mo. banc 2011). “This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt.” Id. at 509 (quotation omitted). We accept as true all evidence favorable to the State, including all favorable inferences drawn from the evidence, and we disregard all evidence and inferences to the contrary. Id.
“When reviewing the sufficiency of evidence supporting a criminal conviction, the Court does not act as a ‘super juror’ with veto powers, but gives great deference to the trier of fact.” Id. (quotation omitted). “This Court will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case.” Id. (quotation omitted). “An appellate court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.” State v. Chaney, 967 S.W.2d 47, 53 (Mo. banc 1998) (quotation omitted).
Here, the State charged Defendant with second-degree domestic assault for attempting to cause physical injury to C.K. by choking her. A person commits the crime of second-degree domestic assault if he or she “[ajttempts to cause ... physical injury to [a] family or household member by any means, including but not limited to ... by choking or strangulation.... ” Mo. Rev.Stat. § 565.073.1(1). However, the term “choking” is not defined by statute.
“In the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary.” State v. Oliver, 293 S.W.3d 437, 446 (Mo. banc 2009). The dictionary de *649 fines the verb “choke as follows: 1: to make normal breathing difficult or impossible for (a person or animal) (1) by compressing the throat with strong external pressure ...” Webster’s Third New International Dictionary 396 (1976); see AAA Laundry & Linen Supply Co. v. Dir. of Revenue 425 S.W.3d 126, 132 (Mo. banc 2014) (citing Webster’s Third New International Dictionary as the court’s “dictionary of choice”).[2]
Viewing the evidence in the light most favorable to the State, there was sufficient evidence to allow a reasonable juror to find Defendant guilty beyond a reasonable doubt of attempting to cause C.K. physical injury by choking her. C.K. testified as follows:
Q. Did he do anything else to you at that point?
A. Yeah, I mean, he tried choking me with his hand, and then that’s when—
Q. When you say he tried choking you with his hand, what specifically did he do?
A. He held me up against the wall with his hand. By my neck.
Q. So he had a hand on your neck, and you said he held you up against the wall?
A. Uh-huh.
Q. Is that a yes?
A. Yes.
Q. How did you feel when he was holding you up against the wall?
A. Scared.
Were you able to breathe at that point? G?
Yeah, I was able to breathe. I mean, I didn’t lose consciousness, but ...
Okay. Did you feel, though, that he was actually squeezing your neck— &
Yes. <1
—or was he just holding it? &
No, he was squeezing it. <rf
Okay. So he was actually choking you at that point. C?
Uh-huh. <$
Is that a yes? O’
Yes. <1
Given C.K.’s testimony that Defendant held her up against a wall by her neck and squeezed her neck, a reasonable juror could have inferred Defendant made C.K.’s normal breathing difficult by compressing the throat with strong external pressure. In addition, C.K. characterized Defendant’s conduct as choking. Therefore, the State introduced sufficient evidence for a reasonable juror to have been convinced of Defendant’s guilt.
Defendant argues choking requires an obstruction of airflow through the windpipe and “all of the testimony at trial indicated that there was no obstruction of C.K.’s windpipe and that she was able to breathe freely.” We disagree. As discussed above, “choke” means “to make normal breathing difficult or impossible.” Webster’s Third New International Dictionary 396 (1976) (emphasis added). *650 Thus, Defendant could have choked C.K. without completely obstructing her windpipe. Moreover, although C.K. stated she could breathe, she never said she could “breathe freely.” C.K. also testified Defendant squeezed her neck and held her up against a wall by her neck. A reasonable juror could have easily inferred those actions made C.K.’s breathing difficult (though not impossible). We must accept as true all favorable inferences drawn from the evidence. Nash, 389 S.W.3d at 509.
Finally, Defendant contends C.K’s testimony that she never felt lightheaded proves she was not choked. Defendant relies on his assertion that “a state of restricted air or blood flow would result in lightheadedness.” However, Defendant cites no authority or evidence in the record to support that proposition. Accordingly, we decline to adopt Defendant’s suggestion that choking requires a feeling of lightheadedness in all cases. We hold the evidence was sufficient to support Defendant’s conviction of second-degree domestic assault for choking C.K. Point one is denied.
B. Defendant’s Motion for Continuance
In his second point on appeal, Defendant asserts the trial court erred in denying his request for a continuance based on the fact that he was unable to depose C.K. until the day before trial. Defendant argues that by denying a continuance, the trial court forced him to proceed to trial with a lawyer who was not sufficiently prepared. We disagree.
“The decision to grant a continuance is within the sound discretion of the trial court.” State v. Salter, 250 S.W.3d 705, 712 (Mo. banc 2008). “Reversal is not warranted unless there is a very strong showing that there was an abuse of discretion resulting in prejudice.” Id. “We will reverse the circuit court’s denial of a continuance only when the circuit court abuses its discretion by entering a ruling that is clearly illogical and is arbitrary and unreasonable.” State v. Lumpkins, 348 S.W.3d 135, 140 (Mo.App.W.D.2011) (quotation omitted). A trial court may properly deny a continuance requested to conduct investigation to counter witness testimony where the defendant neither identifies a witness who can testify as he desires nor asserts particular facts to which the unknown witness he hopes to find will testify. See State v. Lucas, 218 S.W.3d 626, 629-30 (Mo.App.S.D.2007).
On May 15, 2012, Defendant filed a motion to continue the May 16 trial setting. Defendant alleged C.K. had failed to attend scheduled depositions during the pen-dency of the case. Defendant stated that on Monday, May 14, 2012, he learned the prosecutor, who had been unable to contact C.K., located her the previous Friday. Defendant claimed he conducted an interview with C.K. on May 14 that lasted nearly two hours and “resulted in the names and contact information of possible witnesses ... and a story somewhat different than what appeared in the police reports.” Defendant alleged the changes in C.K.’s story were “material to the defense and must be further investigated.” Defendant stated he was scheduled to depose C.K. on May 15, the day before trial. The trial court denied Defendant’s motion because: “The parties have had sufficient time to prepare. No real prejudice to Defendant shown in aftermath of 5/15/12 victim deposition.”
Defendant has failed to make the required very strong showing of an abuse of discretion resulting in prejudice. As to the “possible witnesses” Defendant hoped to investigate, he did not identify them despite his claim that he learned their names and contact information in the May *651 14 interview with C.K. that lasted nearly two hours. Further, Defendant did not state what these witnesses’ testimony would be and how it would aid his defense. See id. Defendant also failed to explain to the trial court how C.K’s story had materially changed or how further investigation would aid or change his defense in any way. See State v. Fassero, 307 S.W.3d 669, 676 (Mo.App.E.D.2010). Thus, the trial court did not err in denying Defendant’s request for a continuance.
Relying on State v. Whitfield, 837 S.W.2d 503 (Mo. banc 1992), and State v. Zetina-Torres, 400 S.W.3d 343 (Mo.App. W.D.2013), Defendant maintains the trial court erred in denying a continuance because he was surprised by new evidence at the last minute. Both Whitfield and Zeti-na-Torres are inapposite because they involved discovery violations by the State' that prejudiced the defense. See Whitfield, 837 S.W.2d at 506-08 (State’s late notification of evidence it intended to use at trial prejudiced the defendant); Zetina-Torres, 400 S.W.3d at 354-57 (multiple late disclosures by the State “culminated in an entirely new theory, the absence of which would have cast considerable doubt on the sufficiency of the evidence in the case”). Here, by contrast, Defendant does not claim the State failed to make C.K. available or otherwise committed a discovery violation. It appears even the prosecutor had difficulty staying in contact with C.K. Moreover, as discussed above, Defendant did not explain why the information he gained from interviewing C.K. was surprising or how further investigation would aid his defense. Point two is denied.
IV. CONCLUSION
The judgment of the trial court is affirmed.
MARY K. HOFF, Presiding Judge, concurs and KURT S. ODENWALD, Judge, dissents in separate opinion.

. All statutory references are to RSMo (Supp. 2009), the version of the revised statutes in effect when the offenses occurred.

. In State v. Ondo, 232 S.W.3d 622 (Mo.App. S.D.2007), the court stated that "[c]hoking is defined as 'producing the feeling of strangulation.’ ” 232 S.W.3d at 628 (quoting Merriam-Webster’s Collegiate Dictionary 218 (11th ed.2005)). The court noted: "Grabbing a person by the throat no doubt produces the feeling of strangulation.” Id. However, the defendant in Ondo did not argue on appeal that his conduct was insufficient to constitute choking for purposes of section 565.073. See id. at 624. Thus, the Ondo court did not address the issue in this appeal — the degree to which a victim's breathing must be obstructed to support a conviction of second-degree domestic assault. Accordingly, we do not find Ondo instructive for purposes of this opinion.